Gary Francis **MARCOUX**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 22863.

United States Court of Appeals Ninth Circuit.

Dec. 30, 1968.

Martin Wolman (argued), Los Angeles, Cal., for appellant.

John Augustine (argued), Asst. U. S. Atty., Edward Davis, U. S. Atty., Jo Ann D. Diamos, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before POPE and CARTER, Circuit Judges, and BYRNE,* District Judge.

POPE, Circuit Judge.

This is an appeal from a judgment and sentence ordered in the court below against the appellant pursuant to an indictment charging appellant with a violation of 18 U.S.C. § 2312 (transportation of stolen vehicle in interstate commerce). The appellant's contentions are that there was insufficient evidence to show that the motor vehicle was stolen; that the police officers who stopped the appellant because of a minor traffic violation, had no right to require the appellant to produce the registration slip for the car, and hence that it was improperly received in evidence; and that there was error in making certain statements of defendant admissible after he had come into the custody of the officers because of failure to comply with the rules laid down in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, relating to the duty of officers to advise the accused of his rights.

We find that none of these contentions is valid or supported by the evidence in this case.

There was an abundance of evidence that the automobile in question was in fact stolen and that the appellant knew at the time he was driving it from California into Arizona that it was a stolen car. The car in question was a 1964 Jaguar sports coupe. It was the property of American Cooling Tower Corporation of Pacifica, California, whose president, who used it, was a certain Ed Johnson. Johnson was a friend of witness Hugh Davis of South Pasadena who intended to buy the car.

On December 17, 1967, while Davis had the car, he left it parked in front of a friend's house in Newport Beach, California, while he and others took a trip in another car. About 12:30 or 1 o'clock the following morning, Davis returned to pick up the car but found it gone. He notified the Newport Beach police department that the car had been stolen. On the evening of December 28, following, two policemen in the City of Douglas, Arizona, saw the same car, traveling in that city, going the wrong way on a one-way alley. At that time the officers stopped the vehicle which was being driven by the appellant.

The car was then bearing British Columbia license plates which had been attached to the car by the appellant. He had removed them from a Convair automobile to which they belonged and substituted them on the Jaguar. When the officers stopped the appellant they asked to see his driver's license which he then produced. One of the officers testified as to these events as follows: "* * * at this time I asked him for his car registration and while I was checking his driver's license, he proceeded to hunt for the registration." After appellant hunted for the registration certificate for about thirty minutes without producing it, the officers asked him if he would like to continue the search in the warmth and comfort of the police station which was a short distance away. The appellant said he would and while getting into the police car he was seen dropping something.[1]

---

* Hon. WILLIAM M. BYRNE, Senior District Judge, Central District of California, sitting by designation.

1. Said the officer: "He started hunting inside the car. He was continuously telling me he was sure that the registration was in a suitcase that was in the back of the car and he said he had put it there when he had crossed from Canada into the United States. But he continued to hunt the registration on the inside of the car and hunted it for about I guess thirty or forty minutes and then he got outside the car again and said he would have to pull a suitcase out and when [went] in and raised the back of the Jaguar, which pulls up, and took a large suitcase out and proceeded to hunt the registration of his automobile in the suitcase but was unable to find it at that time. Q. What happened then? A. It was very cold this night and all we had were flashlights and we suggested to Mr. Marcoux if he would like to take the suitcase or wherever he thought it was and go

What the appellant then dropped upon the ground and what the officer picked up was the registration card for the Jaguar issued by the State of California which showed the registered owner to be American Cooling Tower Corporation of Pacifica, California. At the trial, this registration card, marked Government Exhibit 1, was offered and received in evidence, counsel for the defense then stating, "No objection, your Honor."

There are two significant things about this registration card and what the appellant did with it which convincingly disclosed that the automobile was stolen and that the defendant knew it was stolen. The card indicated that the owner of the automobile was the Pacifica firm and not the appellant, which is at least suggestive that the appellant was not properly in possession of it. More significantly, although when asked for the registration card appellant had made a great pretense of looking for it and not finding it, he dropped it on the ground when he got into the car with the police officers. It was then that the testifying officer suspected something irregular and got out to pick up the card on the ground.

■■ On December 18, when Davis parked the car in Newport Beach, this registration card was on a holder on the steering column. Where it was when the police stopped the car in Douglas does not appear; but it is evident from the circumstances that the jury had the right to infer from the testimony that the defendant had it, or knew where it was, and that when he threw it on the ground he

was attempting to conceal it and to keep it from being discovered by the police officers and that they thus observed he was not the registered owner. As stated by Prof. Wigmore (Wigmore on Evidence, 3d Ed., § 276): "It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."

■ In the course of his testimony Davis referred to special features about this particular Jaguar which identified it beyond question as the very one which he had left parked in Newport Beach at the time it disappeared. In an effort to avoid the inferences to be drawn from the fact that the vehicle carried license plates taken from another car the appellant testified that he had purchased the Jaguar in British Columbia and that under British Columbia law it was permissible to put "tags from one car to another as long as you send in, submit a report to the Government stating this is what you are doing." There was no proof other than the word of the defendant that such was British Columbia law and the defendant's attempted explanation is inherently improbable which the jury would be fully justified in disbelieving.[2] Unquestionably, the Government established that the automobile was stolen, that the defendant knew it was stolen and that, although he had this knowledge, he transported it in interstate commerce.

to the police station, which was only a block away, which you could see it from where we were, if he would like to go and take his baggage and go inside here and try to find the registration. And he stated that he would. He had in his hand two pieces of paper, looked like two napkins and another piece of paper and he put his baggage in the back of the police car and he got in and as he started in he dropped these two pieces of paper on the

ground and I got out and picked them up."

2. While it is not any part of the record here, the falsity of that assertion as to what is permissible in British Columbia is clear as an examination of British Columbia law discloses. See Motor-vehicle Act, Revised Statutes of British Columbia 1960, ch. 253. See also F.R.Crim.P. Rule 26.1.

■ Some argument is made that the officers had no right to demand production of the ownership certificate. This is an immaterial matter as the certificate was picked up from the ground where the appellant had dropped it. There is no evidence that the officers made a search of the car. In any event, the request would be a reasonable one since under Arizona Revised Statutes, § 28–305, subsec. D: "The registration card shall at all times be carried in plain sight within the drivers' compartment of the vehicle for which issued, and shall be subject to inspection by the vehicle superintendent or his authorized agent, members of the highway patrol or any peace officer." In view of this provision, it must be said it was a reasonable thing for the officers to ask for the registration certificate.[3]

■ The next contention of the appellant is that he was not advised of his "Miranda rights" prior to the admission in evidence of Exhibit 1, the ownership certificate. Reference is made to Miranda v. Arizona, supra.

Appellant is completely in error in his assertion with respect to application of the Miranda case here. No statement of the defendant was ever received in evidence and appellant recognizes that he must address his argument to the receipt in evidence of the ownership certificate. However, the ownership certificate was an item of property which, as the evidence shows, had been stolen. All that the officers did was to pick up the stolen item of property. It was as admissible in evidence as would have been any other stolen object. Miranda has not the remotest application to any evidence received in this case.

We find the appeal wholly without merit and the judgment is affirmed.

3. Moreover, while A.R.S. § 28–501, subsec. H exempts the registration of most foreign vehicles owned by non-residents for ten days following entry into Arizona, that section in no way limits the authority of officers to request inspection of a registration certificate under § 28–305, subsec. D.