**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Charles SIDMAN and Robert Joseph Clifford, Defendants-Appellants.**

**Nos. 71–1918, 71–2682, 71–2582.**

United States Court of Appeals, Ninth Circuit.

Oct. 16, 1972.

Certiorari Denied Jan. 15. 1973.

See 93 S.Ct. 948.

Richard D. Totter (argued), San Francisco, Cal., Martin Levine, Deputy Public Defender (argued), Michael P. Balaban, Deputy Public Defender, John K. Van de Kamp, Public Defender, Los Angeles, Cal., for defendants-appellants.

William John Rathje, Asst. U. S. Atty. (argued), Darrell W. MacIntyre, Asst. U. S. Atty. (argued), Eric A. Nobles, Asst. U. S. Atty., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and MURPHY, District Judge.*

MURPHY, District Judge:

## I.

### SIDMAN APPEAL

Sidman appeals from two judgments of conviction in the District Court for the Central District of California.

In No. 71–2682 he was convicted, after a jury trial, of armed robbery on January 6, 1970, of the United California Bank at Palm Desert, California (Count 1 of a three-count indictment) (18 U.S.C. § 2113(a) and (d)), and of robbery on May 26, 1970 of the Valley National Bank at Edgemont, California (Count 3) (18 U.S.C. § 2113(a)). Carroll, Sidman's accomplice in the Edgemont robbery, pleaded guilty to Count 3 prior to trial. Both banks were insured by the Federal Deposit Insurance Corporation.

In No. 71–1918 Sidman and co-defendant Clifford were convicted after a "multiple jury" trial [1] on Count 2 of the same indictment, which accused Sidman and Clifford of armed robbery on Feb-

---

* Honorable Thomas F. Murphy, Senior United States District Judge, sitting by designation.

1. The issue of "multiple juries" is discussed *infra*, p. 1167.

ruary 20, 1970, of the same Valley National Bank at Edgemont, California (18 U.S.C. § 2113(a) and (d)).

Sidman was sentenced in No. 71–2682 to concurrent 15 years, and in No. 71–1918 to 22 years to run concurrently with the sentences imposed in No. 71–2682. We ordered both appeals consolidated, and will consider each appeal *seriatim.*

### No. 71–2682

Since Sidman complains of the sufficiency of the evidence against him, a review of such evidence in the light most favorable to the Government is in order. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Magana, 453 F.2d 414, 415 (9th Cir. 1972).

The Government first offered testimony relevant to Count 3 (the robbery of the Valley National Bank on May 26, 1970), and then followed with testimony relevant to Count 1 (the robbery of the United California Bank on January 6, 1970), and corroborated the testimony on both counts with the testimony of Sidman's accomplice, Carroll.

The robbery of the Valley National Bank at Edgemont, California, on May 26, 1970, was proved by two bank employees who testified that Sidman, armed with a gun, entered the bank on that day and ordered the employees to the floor. The bank manager testified to being compelled to open the vault and to the theft of $7,783. Although Sidman was wearing a false mustache at the time, the two witnesses made in-court identifications of Sidman and one witness of his companion and accomplice, Carroll.

As to the armed robbery of United California Bank on January 6, 1970 (Count 1), the bank manager testified that two men entered the bank on that day. One of the men approached her, opened his coat exposing a gun, and demanded she open the teller's drawers and also give him the key to the vault. She complied, and that man escaped with $9,707. She could not identify the man with the gun other than to recall he had a dark mustache. Carroll (although not named in this Count), testified that he was the other man who entered the bank with Sidman. He corroborated the bank manager's testimony as to the actions of Sidman described by her, and further corroborated the testimony of the three bank employees with reference to the robbery of the Valley National Bank on May 26, 1970, since he and Sidman had robbed that bank together. He further explained how Sidman had disguised himself and to warnings from Sidman not to testify against him. In doing so he recanted a statement he had signed at Sidman's lawyer's office.

█ Sidman, who did not testify, presented two alibis, supported by (1) the testimony of his wife and (2) the testimony of his step-daughter-in-law, to the effect (1) that he was in Wichita, Kansas, on the day of the robbery of the United California Bank at Palm Desert, California, and (2) in his place of business at Pomona, California, on the day of the robbery of the Valley National Bank at Edgemont, California. The jury obviously accepted the Government's evidence and rejected the alibi defenses. We find the Government's evidence overwhelming.

██ We can readily dispose of Sidman's next assignment of error with regard to Count 1, namely, whether an accomplice's testimony without any other evidence connecting the defendant with the crime is sufficient to convict the accused. Counsel misconstrues the "power" of a witness, even an accomplice; his testimony does not have to be corroborated but merely examined with care and scrutiny, which we assume the jury did, since it was so instructed. United States v. Andrews, 455 F.2d 632 (9th Cir. 1972); Lyda v. United States, 321 F.2d 788, 794–795 (9th Cir. 1963). The jurors are the sole judges of the facts and the credibility of the witnesses. United States v. Brown, 454 F.2d 397, 398 (9th Cir. 1972); see, Cramer v. United States, 325 U.S. 1, 43, 65 S.Ct. 918, 89 L.Ed. 1441 (1945).

■ Appellant next claims that Count 1 for armed robbery is contrary to legislative intent and purpose when Sections 18 U.S.C. 2113(a) and (d)[2] are fused. The gist of his argument is that "since it doesn't make any difference to the apprehended bank thief whether he exhibits a loaded or unloaded gun, he might as well load it, as he will be prosecuted for the additional 5 years either way." We are uncertain what this means, but we are satisfied that Congress was within its constitutional power to punish more severely an aggravated form of the offense of bank robbery. In any event, appellant's contention is without merit, since we have held that even when there is no direct evidence that the gun was loaded, a jury could infer that it was and find that the person assaulted feared for his life. United States v. De Palma, 414 F.2d 394, 396 (9th Cir. 1969), cert. denied 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970).

■ Appellant further claims that he did not receive a fair trial because his attorney was improperly charged by the trial judge with unprofessional conduct prior to putting in his case. This claim is frivolous. Out of the presence of the jury the trial judge, after he had learned from the testimony that the defendant's trial counsel had taken a written statement from Carroll when he knew at the time that Carroll was represented by an attorney, told counsel he "better read the Rules of Professional Conduct." After closing arguments of both counsel the Court told the defendant's counsel, again out of the presence of the jury, that he was referring such conduct to the Court's Standing Committee on Discipline. Such comment and action by the trial judge were well deserved and could not possibly have interfered with Sidman's counsel's presentation of the defense. A reading of the testimony of defendant's witnesses indicates a well ordered presentation of two alibis. Cf., United States v. Allen, 431 F.2d 712 (9th Cir. 1970).

■ Finally, Sidman raises three alleged errors relating to the Court's evidentiary rulings. The first relates to the alibi testimony of defendant's wife concerning a telephone call she received from her husband while, according to her, he was in Wichita, Kansas, on the day of the robbery of the United California Bank (Count 1). Sidman's telephone bills were received in evidence as corroboration. She could not remember on cross-examination, however, how long Sidman had been away from home or where he was in Wichita. After both counsel advised the Court that they had no more questions of the witness, Mrs. Sidman, the trial judge asked her if she knew how her husband had traveled, by car or by air, and she replied, "by air." He then asked if they had a credit card for gasoline and was told, "yes," and a little later, on continued cross-examination, she could not recall if they had any gas bills since sometimes "we paid cash." On redirect examination Sidman's counsel made an offer of proof to the effect that a Robert Smith stole all of the records of the Pomona Valley Hearing Aid (Sidman's company), including credit cards in that name, which proof, he claimed, would tend to show that they had no records from the oil companies. Objection to this offer was sustained. Counsel characterizes these few pertinent questions by the Judge as prejudicial, and his denial of the offer of proof as error. The questions were germane and did not interfere with or interrupt counsel's questioning of the witnesses.

2. "2213. Bank robbery and incidental crimes
 "(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, managment, or possession of, any bank, or any savings and loan association; or

\* \* \* \* \*
 "(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

The Judge was performing one of his functions—to develop facts. Cf., Estrada v. United States, 392 F.2d 529, 530 (9th Cir.), cert. denied 393 U.S. 881, 89 S.Ct. 184, 21 L.Ed.2d 154 (1968). Proof of loss of the credit cards would not establish that gasoline was or was not purchased in Wichita, Kansas, on January 6th.

A claim that the Court improperly admitted evidence tending to show that Sidman, shortly after the robbery, had a large sum of money in cash, is incorrect; the evidence was indeed relevant. United States v. Michaelson, 453 F.2d 1248, 1249 (9th Cir. 1972); Sidders v. United States, 381 F.2d 513, 515 (9th Cir. 1967).

Lastly, appellant argues that the Court was in error for permitting the presentation of Sidman's bad character. This is just inaccurate. During the cross-examination of Mrs. Turner, defendant's step-daughter-in-law, she was asked, over objection, whether Sidman ever told her that the longer he waited to surrender the dimmer the memories would be. She responded:

> "I don't remember whether Mr. Sidman said something to that effect or whether someone else did. Once I do remember a mention was made of giving himself up and proving his innocence. Sidman said that because—and as again I don't know whether—remember whether he said it or whether it was repeated to me—because he was a three-time loser right now he would not be given a chance to explain. A little later on he would turn himself in and clear himself."

The defendant did not move to strike the unresponsive reference to Sidman's being a three-time loser or ask for a protective instruction. The question itself was relevant to Sidman's consciousness of guilt. See, 2 Wigmore on Evidence, 3d ed., Sec. 276, cited with approval in Marcoux v. United States, 405 F.2d 719, 721 (9th Cir. 1968). In fact, the F.B.I. agent, Pelegada, later testified that she had made such a statement to him.

The admissibility of the evidence of Sidman's criminal past may not be questioned on appeal when no objection was made when it was inadvertently offered unless we find plain error under Rule 52(b), Federal Rules of Criminal Procedure. However, the plain error rule should be invoked only in "situations wherein it appears to be necessary in order to prevent miscarriage of justice or to preserve the integrity and reputation of the judicial process." Marshall v. United States, 409 F.2d 925, 927 (9th Cir. 1969). We find nothing after our review of the record which would indicate that the irresponsive statement had a substantial influence on the verdict (Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) or which would lead us to believe that appellant did not have a fair trial.

Finding no error, we affirm the convictions on Counts 1 and 3.

### No. 71-1918

Sidman and Clifford were jointly and contemporaneously tried and convicted by two separate juries of Count 2 of the same indictment which accused both of armed robbery of the same Valley National Bank at Edgemont, California, on February 20, 1970. Sidman, in addition to the alleged error of contemporaneous multiple juries discussed *infra,* p. 1167 claims errors relating to the trial judge's admission and exclusion of evidence.

Although we will discuss the question of multiple juries *infra,* suffice it now to say that a separate jury was impaneled to try Sidman and another jury to try Clifford. Both juries were present when the testimony was relevant and admissible against both, but one or the other jury was excused when the testimony related to and was admissible against only one defendant.

The Sidman jury could have found the following facts:

Sidman, brandishing a gun, entered the Valley National Bank at Edgemont, California, on February 20, 1970. He ordered the bank personnel to sit down

and face the wall, ordered one of the tellers to give him the key to the cashier's box and asked the bank manager for a list of the marked money. He had the bank manager lead him to the vault, and then absconded with $35,028. The Government called three employees and a customer as identifying witnesses, who also testified that Sidman had worn a false beard and mustache. They also testified that Sidman had been accompanied by Clifford, who had remained near the door during the robbery. The Government called Carroll, Sidman's accomplice in Count 3, who testified that Sidman had told him in May 1970 that he and Clifford had robbed the Valley National Bank at Edgemont, California, in February 1970. Carroll also corroborated the eye-witnesses' testimony as to the disguise employed by Sidman, that is, tinting his hair gray, taking out his upper dentures, and wearing either a mustache or beard.

Another Government witness, Mrs. Turner, Sidman's step-daughter-in-law, testified that she saw a wad of money in Sidman's office in early March 1970 and that Sidman had told her that it amounted to $30,000.

Sidman, who did not testify, presented an alibi as his defense. His wife and children testified that on February 20, 1970, Sidman accompanied them on a family outing to Oceanside, California, with Mr. and Mrs. Clifford.

▆▆ Sidman's first assignment of error is that the Court wrongfully limited his cross-examination of one of the tellers, Mrs. Smith, who had identified Sidman as one of the robbers. She testified that Sidman at the time wore a beard and a mustache. At the time of trial Sidman had no beard or mustache.

Sidman's counsel asked the Court if he could attempt to cover Sidman's face with a piece of paper to the extent that would be agreeable to the witness in order to show how Sidman's beard and mustache had covered his face. This was denied with the remark by the trial judge, "I don't think so, not with paper." We agree. Sidman's counsel had already quite thoroughly cross-examined Mrs. Smith on her ability to identify Sidman. The offered visual demonstration did not fairly illustrate the testimony even if the Court, in an abundance of caution had allowed it. There were three other persons who identified Sidman. We cannot say that the Court abused its discretion. *Cf.*, Longmire v. United States, 404 F.2d 326, 327 (5th Cir. 1968), cert. denied 395 U.S. 912, 89 S.Ct. 1757, 23 L.Ed.2d 225 (1969).

Sidman complains also of the limitation of his cross-examination of Carroll, claiming that he was not permitted to elicit the bias of this witness by showing that he expected leniency and to explore Carroll's understanding relative to Carroll's meeting with two F.B.I. agents and an Assistant United States Attorney.

Carroll was first cross-examined on his business association with Sidman, then as to his guilty plea to a "robbery" charge, and suddenly the questions shifted to the testimony he had given on direct. This testimony is quoted in the margin.[3] The one question complained of, "How long were you in jail," had no relation or probative value on the issue of Carroll's expectation of leniency. At no other time did Sidman's trial counsel explore or make an offer of proof as to the relevancy of Carroll's time in jail.

---

3. "Q. Mr. Carroll, * * * prior to November 20 of 1970 you had talked to the FBI agents with reference to an alleged conversation you had with Mr. Sidman concerning a bank robbery, is that correct?
"A. Yes, sir. * * *
"Q. Was Mr. Sidman to your knowledge in jail when you first talked to the FBI agents concerning this conversation?

"A. Was Mr. Sidman in jail?
"Q. Yes.
"A. No, sir.
"Q. How long were you in jail?
"MR. MacINTYRE: Objection to the question is irrelevant.
"THE COURT: Objection sustained."

The questions then immediately continued as follows (pp. 1589–1592):

"Q. Did you also have occasion to speak to a Mr. Prager, a deputy U. S. attorney, concerning this conversation you had with Mr. Sidman?

"A. Yes, sir.

"Q. Was it on one occasion or more than one occasion?

"A. One.

"Q. Was that when you were in jail or out of jail?

"A. I was out of jail.

"Q. On what date was that?

"A. August 24.

"Q. And where did this conversation take place?

"A. At a restaurant up on—well, at first it was at my attorney's office and then from there we went up to a cafe up on Sunset Boulevard.

\* \* \* \* \* \*

"Q. Who was present there?

"A. Mr. Prager and Mr. Wells, Mr. Worfield, my attorney, and myself.

"Q. Did you understand that this meeting at the cafe was for the purpose of facilitating your cooperation with the Government?

"MR. MacINTYRE: Objection. Assumed facts not in evidence.

"THE COURT: Sustained.

\* \* \* \* \* \*

"Q. You had some conversation with your attorney, Mr. Wood, concerning this meeting before the meeting, is that correct?

"A. Yes, if you want to call it a conversation. It only consisted of about twelve words.

"Q. Was it your feeling that you were going to make some sort of a deal with the U. S. Attorney's office?

"MR. MacINTYRE: Objection as assuming facts not in evidence.

"THE COURT: Sustained.

"Q. Did Mr. Wood tell you that some sort of a deal was going to be made with the U. S. Attorney's office?

"Mr. MacINTYRE: Objection. Hearsay.

"THE COURT: Sustained."

 Carroll's *understanding* or *feeling* about a possible deal was relevant and should have been received. Marsh v. United States, 402 F.2d 457, 458 (9th Cir. 1968). The other objections by the Government were that the questions were bad as to form; however counsel never pursued any of them by rephrasing the questions. On the other hand, the fact that Carroll had been indicted, pleaded guilty, was awaiting sentence, had talked to Government agents, and agreed to testify were all thoroughly covered and used as a basis for argument to the jury on Carroll's possible bias. Although the widest possible latitude should be given to counsel on cross-examination, sufficient facts were elicited on the witness' bias or animus in order for a jury to properly appraise Carroll's testimony. United States v. Rodriguez, 439 F.2d 782, 783 (9th Cir. 1971); Ray v. United States, 412 F.2d 1052, 1054–1055 (9th Cir. 1969). We are satisfied that the evidence was so overwhelming against Sidman that the error was harmless beyond a reasonable doubt. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

 The next ruling complained of relates to the Government's redirect examination of Carroll when the Government was permitted, over Sidman's objection, to have Carroll state the specific charge to which he had pleaded guilty. Carroll answered that it was to the charge in which both he and Sidman were accused of robbing the Valley National Bank on May 26, 1970 (Count 3). It is the Government's claim that Sidman invited the testimony about another robbery charge by his own cross-examination of Carroll because counsel for Sidman carefully refrained from asking the witness what the robbery charge related to or specifically whether it was the charge contained in the count being

tried. *Cf.*, Anderson v. United States, 369 F.2d 11, 16–17 (8th Cir. 1966), cert. denied 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967).

Perhaps the contretemps could have been avoided if the Government on direct had Carroll testify to the fact that he had pleaded guilty to a charge that he had robbed the Valley National Bank on May 26, 1970, and was awaiting sentence. *Cf.*, Loraine v. United States, 396 F.2d 335, 339 (9th Cir.), cert. denied 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). Since it didn't, it was trapped by cross-examination which left the impression that Carroll might have committed the robbery of the Valley National Bank on February 20, 1970 and was shifting the blame to Sidman. We believe, however, it was harmless error beyond a reasonable doubt in view of the overwhelming evidence against defendant on the Government's case in chief, firstly, because of the direct testimony of the bank employees and secondly, Sidman's admissions to Carroll concerning the robbery as charged in Count 2. See, Schneble v. Florida and Harrington v. California, *supra.*

■ After the alibi evidence had been received, the trial judge permitted the Government, over Sidman's objection, to recall Carroll, who testified to Sidman's *modus operandi* in robbing the Valley National Bank on May 26, 1970, for the avowed purpose of aiding the jury on the question of identity, i. e., to determine whether Sidman or someone else robbed the same bank on February 20, 1970. The Court instructed the jury in its charge that the evidence was relevant only on the question of identity of the persons who robbed the bank on February 20. Defendant took no exception to the charge. Such evidence has been sanctioned by this Circuit. Parker v. United States, 400 F.2d 248, 251–252 (9th Cir. 1968), cert. denied 393 U.S. 1097, 89 S.Ct 892, 21 L.Ed.2d 789 (1969).

■ The last error complained of is the refusal of the Court to permit defendant's witness Mrs. Turner to testify concerning the amount of sales in Sidman's business in the period around Eastertime 1970. This was an attempt by the defense to explain the large amount of cash in Sidman's possession shortly after the robbery. She was asked if she knew how many sales Sidman had averaged during the Easter period. The witness said that she could not say. Sidman's counsel then tried several times to phrase a question so as to elicit testimony on the approximate sales per week, as follows (p. 1646):

"Q. Do you know the approximate sales that you had during that week?

"A. I know the approximate sales. Our records and receipts and everything were kept at Venture Business Records in San Diego, and I don't have access to them, but the approximate—

"THE COURT: Just a minute, she can't testify to that. That is the best evidence, Mr. Solis.

"MR. SOLIS:

"Q. Do you have knowledge of Mr. Sidman receiving any money other than from the sale of instruments during that period of time?

"A. Yes, I do.

"Q. What was that?

"A. Attorney Allen Smith of San Diego told me—

"MR. MacINTYRE: Objection. your Honor, hearsay.

"THE COURT: Objection is sustained.

"BY MR. SOLIS:

"Q. Did Mr. Sidman tell you he received any money during this period other than from sales?

"A. Mr. Sidman was appraising a group of his—

"MR. MacINTYRE: Objection, your Honor, this would be hearsay.

"THE COURT: Objection is sustained.

"MR. SOLIS: Nothing further."

The Court's suggestion did not limit Sidman in his proof of sales. Shreve v. United States, 103 F.2d 796, 808 (9th Cir.), cert. denied 308 U.S. 570, 60 S.Ct. 84, 84 L.Ed. 479 (1939).

*Multiple Juries*

The trial of Sidman on Counts 1 and 3 was before a single jury in December 1970, with Judge Real presiding. At that time Judge Real thought that the Government was about to try Count 3, which accused Sidman and Carroll, and suggested that two juries could be impaneled to avoid any *Bruton* problem. (Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)). However, the United States attorney advised the Judge that they could not give Carroll, who had confessed, immunity under the Organized Crime Control Act of 1970 (18 U.S.C. § 6001 et seq.) because it did not become effective until December 15, 1970. After a short recess Carroll pleaded guilty to Count 3, testified for the Government, and the trial proceeded to verdict. The joint trial of Sidman and Clifford on Count 2 began before a single jury on February 2, 1971. Counsel for Clifford moved for a severance because he feared that evidence of several robberies would be injected into the case, whereas Count 2 charged only one robbery. The Court assured counsel that he would allow only one robbery in evidence, and then added:

"THE COURT: That is the case in chief. I don't want to mislead counsel. That is the case in chief. There will be no reference to any other robbery. The robbery on trial is Count 2 and that is all the evidence that is going to be permitted."

After denying the motion for severance, the Court continued:

"THE COURT: Mr. MacIntyre, so we have no problem there will be no reference by the witnesses to any other robbery other than the one of February 20, 1970 in which Mr. Sidman and Mr. Clifford are charged. You raised something else about the testimony of Mr. Carroll. That doesn't raise a *Bruton* problem, Mr. Balaban, at all.

"Mr. MacINTYRE: Your Honor, just for point of clarification, then the only way that—prior similar acts may be used for impeachment purposes but not in the case in chief.

"THE COURT: Yes, that's right, but not in the case in chief."

On the second day of the trial a mistrial was declared because the prosecutor had deleted a portion of some Jencks Act (18 U.S.C. § 3500) material without defendants' knowledge. The Judge reset the trial of Count 2 for February 23, 1971.

Before any jury was impaneled on February 23, 1971, Sidman's counsel started to make a motion out of the presence of the veniremen based upon his understanding that two juries were to be selected, one to try Sidman and the other Clifford, to obviate "the difficulties presented by the *Bruton* case." His objection to this procedure was interrupted by the Court, and the following colloquy took place (p. 976):

"THE COURT: I don't think *Bruton* really applies, but in an abundance of caution I am taking that tack, Mr. Solis, because I don't think *Bruton* really applies to this factual situation.

"MR. SOLIS: I feel, your Honor, that to select two juries to determine separately the guilt or innocence of these defendants is open to the suggestion that possibly they should be treated differently or that perhaps one individual is more guilty than the other. I think—or maybe less guilty or less active and I think—

"THE COURT: Which one would you suggest?

"MR. SOLIS: I am merely reading into the minds of the jury, not into my mind, your Honor.

"THE COURT: The answer is the same, Mr. Solis. The answer is the same.

"MR. SOLIS: For that reason—

"THE COURT: I can't say that inference is a fair inference at all and which way the knife cuts, we can't tell that, if it cuts at all.

"MR. SOLIS: I assume that the motion is denied?

"THE COURT: Yes, the motion is denied."

Accordingly, a jury of 12 and one alternate was selected to try Clifford, and then execused while a jury of 12 and one alternate was selected to try Sidman. Sidman and his counsel were present during both jury selections, although the defendant Clifford and his counsel were not present at their request during part of the selection of the Sidman jury. The Judge was meticulous in explaining to the entire panel and to each jury that there would be two juries, one to try the guilt or innocence of Sidman and the other to try the guilt or innocence of Clifford, and instructed each jury not to talk to anyone about the trial and particularly not to talk to any of the other jurors in the other case. He even gave an appellation to each jury, that is, one he called the Clifford jury and the other the Sidman jury. We were told on oral argument that one jury sat in the regular jury box and the other jury in chairs immediately in front of the jury box.

Both juries were selected from a panel of veniremen but before the selection of the Sidman jury was completed the panel was exhausted and after lunch more veniremen were used. Because of this the Judge had to repeat his general *voir dire*, including his explanation of the prior selection of the Clifford jury.

In the presence of both juries the trial court gave its preliminary instructions and the Government made a brief opening statement. Both defendants and their respective counsel were present but neither counsel for the defendant made an opening statement, reserving that with the consent of the Court.

Throughout the trial Sidman and his counsel were present whenever any testimony was being presented to the Sidman jury, and were present at times and actually participated during the presentation of testimony to the Clifford jury. Sidman and his counsel were present before the Sidman jury during summations and the Judge's charge, and of course at the return of the verdict. The Clifford jury heard the testimony against Clifford from February 23 to February 26 when they returned a verdict which was sealed at the Court's direction. The Court instructed the Clifford jurors and counsel not to talk about that trial or that a verdict had been returned, and we gather from the briefs that that instruction was honored. The Sidman jury heard testimony from February 23 and returned its verdict on March 1st. It has been agreed that the Clifford verdict was not announced until after the Sidman verdict had been returned.

It is far from clear in the record on appeal why the trial court impaneled two juries. The Government's brief suggests it was to avoid the *Bruton* problem with the witness Carroll and that the use of two juries eliminated the "ineconomies" inherent in two separate trials.

Nowhere does it appear in the record or in the Rules of the District Court that the District Court *qua* court had sanctioned such procedure by court rule, although we were told on oral argument that the judges of the District Court had been polled and agreed to such procedure. Counsel for Sidman, as we indicated, evidently had some prior knowledge, since he excepted to the procedure. Defendant Clifford's counsel was evidently agreeable, since he remained silent and has not raised the issue on his appeal. The record does not indicate that the defendants agreed or were asked for their consent.

The trial judge told the juries that it was an "experiment," and Sidman, on appeal, attaches some sinister legal significance to that term. We disagree; we adopt what the Third Circuit said in Byrne v. Matczak, 254 F.2d 525, 529 (3rd Cir. 1958), cert. denied 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58 (1958), that "fair new procedures, which tend to facilitate proper fact finding, are allowable, although not traditional." *Cf.,* Williams v. Florida, 399 U.S. 78, 90 S. Ct. 1893, 26 L.Ed.2d 446 (1970) (State criminal jury trial by six not in violation of Sixth Amendment); Colgrove v. Battin, 456 F.2d 1379 (9th Cir. 1972) (Federal civil jury trial by six not in violation of the Seventh Amendment).

We are concerned here not with the number of jurors in a Federal criminal trial but whether a single trial of two defendants before two separate juries violated any constitutional, statutory, or procedural right of Sidman.

The Constitution, Article III, Section 2, Clause 3, provides:

"The Trial of all Crimes * * * shall be by Jury * * *"

The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * * and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

In Patton v. United States, 281 U.S. 276, 288, 50 S.Ct. 253, 254, 74 L.Ed. 854 (1930), the Supreme Court, construing the phrase "trial by jury", said:

"That it means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted, is not open to question. Those elements were—(1) that the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous."

Rule 1 of the Federal Rules of Criminal Procedure provides:

"These rules govern the procedure * * * in all criminal proceedings, with the exceptions stated in Rule 54 * * *."

Rule 23 provides:

"(a) Trial by Jury. Cases required to be tried by jury shall be so tried * * *.

"(b) Jury of less than 12. Juries shall be of 12 * * *."

Rule 43 provides:

"Rule 43. *Presence of the Defendant.*

"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence * * *."

It is clear that Sidman enjoyed each and every right given to him by the Constitution, the Sixth Amendment, and by rule. He claims, however, that the "experiment" of the two juries is a violation of due process in a fundamental sense and therefore a violation of the Fourteenth Amendment. What the violation is he does not explain other than to suggest, from the definition of the word "experiment," that the trial was in fact a test—"an operation carried out under controlled conditions in order to discover an unknown effect or law," and hence in some way ran counter to the Rules of Criminal Procedure with regard to joinder and counter to the *Bruton* rule. But defendant Sidman had a joint trial with his co-defendant Clifford on all of the evidence that was admissible against both, and a separate trial on the evidence admissible only against him pursuant to *Bruton.* In fact, the Sidman jury heard all of the testimony of the bank employee witnesses who described the robbery and the part that each defendant played. The Sidman jury only heard testimony from Carroll after the *Clifford* case was completed and the jury charged.

It is argued that this experiment had surprised and stultified the experienced Sidman trial counsel. The facts are to the contrary. Sidman's trial counsel had the extraordinary advantage of cross-examining Carroll in front of the Clifford jury without the least danger of hurting his defense of Sidman, since the Sidman jury was not present, and, armed with what he learned, he cautiously and adroitly cross-examined Carroll before the Sidman jury, particularly

about Carroll being arrested and pleading guilty to a "robbery" charge discussed above. Instead of stultifying counsel, it made him prudent and perspicacious.

Sidman hints that with two juries hearing a case simultaneously, the trial ceased to be a public trial because the more space occupied by the jurors, the public was excluded *pro tanto*. This argument might become valid if there were perhaps three or four juries impaneled, but such is not the case here. The two juries were within the well of the courtroom reserved for counsel and the jury did not in the slightest encroach on any space reserved for the public.

He also complains that the Sidman jury was denied the right to hear the testimony of Clifford, who testified in his own behalf before his own jury. But Sidman did not call him as a witness, as he could have. Parenthetically, Clifford did not testify to any fact concerning the robbery either on direct or on cross-examination but only testified to his alibi defense that he and his family, together with Mr. and Mrs. Sidman, were at Oceanside at the time. Sidman presented the same evidence through the testimony of his wife and children.

Sidman and his counsel were not denied any fundamental right but on the contrary enjoyed all the rights and privileges given to them by law.

While we uphold the use of two juries in this case before us, this should not be taken as a blanket endorsement by us of such a trial. While it solved part of the *Bruton* problem in Sidman's case, it didn't in the *Clifford* case (see *infra*). The underlying reason for impaneling two juries, although not expounded by the trial court, was undoubtedly one of economics, that is, conserving the juries' time and costs, the Court's time, and the witnesses' time, costs and convenience. We agree it was more economical, al-

though the jury fees and expenses would have been the same whether the trial was joint or separate. There was a saving as to some of the witnesses' time, convenience and expense; and of course the Judge's time was saved since the joint trial took four days and separate trials would have taken eight. This was indeed a saving.

Although we uphold the trial by two juries in this case, we think that unless some guidelines are established by court rule at the District Court level, guidelines which are not inconsistent with 28 U.S.C. § 2071, Rule 57, and new Rule 50 of the Federal Rules of Criminal Procedure, our holding is not to be read as an endorsement of the "experiment" that was carried out in this case.

Finding no error, we affirm Sidman's conviction on Count 2.

## II.

### CLIFFORD APPEAL

Clifford appeals from a judgment of conviction in the District Court for the Central District of California of armed robbery (18 U.S.C. § 2113(a) and (d)) of the Valley National Bank at Edgemont, California, and was sentenced for a period of 15 years. Execution of the sentence was suspended and he was placed on probation for 5 years.

The central issue on Clifford's appeal is the existence of reversible error by reason of a claimed violation of the rule of Bruton v. United States, *supra*.

During the prosecutor's redirect examination of the Government's witness, Carroll, before the Clifford jury, the prosecutor asked Carroll about a conversation he had with Sidman on May 20 or May 22, 1970: "What did Mr. Sidman tell you in regard to the robbery of the bank on February 20, 1970?" Defense counsel's hearsay objection was overruled and Carroll replied, "He told me that him and Mr. Clifford robbed it." [4]

---

4. The examination continued as follows:
 "Q. Where was this conversation?
 "A. In his car. We were just driving around. This took place when he

was trying to convince me to rob it the second time.
 "Q. You say the second time.
 "A. Yes.

Sidman did not testify at Clifford's trial, and he was not available for cross-examination.

The Government argues that the hearsay objection was properly overruled because the testimony was admissible under the "concert of action" exception to the hearsay rule,[5] citing United States v. Adams, 446 F.2d 681 (9th Cir.), cert. denied 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 257 (1971), and Kay v. United States, 421 F.2d 1007 (9th Cir. 1970). The limitation on the exception is stated in *Kay*. "Where, as in *Bruton*, the chief objective of the conspiracy has ended, either in success or failure, the extra-judicial statements of a co-defendant are not admissible." (421 F.2d at 1010.) (Citations omitted.)

▮ The joint activity of Sidman and Clifford, if any, had ended before Sidman's conversation with Carroll. Carroll never had any relationship with Clifford. The evidence was inadmissible hearsay. (*E. g.*, Bruton v. United States, *supra;* Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L. Ed. 790 (1949); Pulido v. United States, 425 F.2d 1391 (9th Cir. 1970).

The admission of Sidman's extrajudicial accusation violated the Confrontation Clause of the Sixth Amendment. Sidman did not testify and he was not practicably available for cross-examination. (See Bruton v. United States, *supra; cf.*, Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971); California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970).

We cannot say that the *Bruton* error was harmless beyond a reasonable doubt. Other evidence linking Clifford to the robbery was not overwhelming. (Cf., Harrington v. California, supra). Testimony by two eyewitnesses who identified Clifford as one of the robbers was not strong.[6] The remaining evidence was Carroll's testimony that Clifford told him that he and Sidman robbed the bank. The jury's assessment of this evidence, had it not heard Carroll testify to Sidman's confession, is highly problematical.

We do not reach Clifford's other arguments on appeal. None of the claimed error is likely to recur on retrial if the Government chooses to proceed with this case.

We reverse Clifford's conviction.

---

"Q. When was this conversation?
"A. This was approximately May 20, May 22nd, around in there.
"Q. What did he say to you in regard to having you rob it the second time?
"A. Well, he told me that him and Mr. Clifford robbed it prior to this, and that they used his car in the robbery and that Mr. Clifford—all he did was have the people come in and face the wall or lie down, one of the two, and that he went through the process and went down the line through the tellers cages and in the vault, came back out, asked the manager for the bait sheet. The manager gave it to him, and they went out and got in his car and left."

5. Notwithstanding its hearsay character, testimony of out-of-court declarations implicating another, offered to prove the other's guilt, is admissible if there is independent evidence that at the time of the declaration, the declarant and the other person were engaged in a concert of action involving the criminal conduct in question. See, United States v. Griffin,

434 F.2d 978, 983–984 (9th Cir. 1970), cert. denied Andrews v. United States, 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160, rehearing denied 404 U.S. 877, 92 S. Ct. 27, 30 L.Ed.2d 124 (1971); Reyes v. United States, 417 F.2d 916, 920 (9th Cir. 1969).

6. Witness Venninger testified on direct examination that she saw a man in the courtroom who looked "similar" to the man who accompanied Sidman in the bank. On cross-examination, she admitted that her identification had never been positive. She concluded, "Sir, I will say this: He looks like the man who came in the bank at that time. It possibly could be."
Witness Johnson made a positive in-court identification of Clifford. However, she had given earlier statements in which she had expressed doubt about her ability to identify Sidman's accomplice, and there is an indication that her identification testimony may have been influenced by a suggestive photographic identification process.