397 So.2d 1337 (1981)
STATE of Louisiana
v.
Michael WATSON.
No. 80-KA-1966.
Supreme Court of Louisiana.
April 6, 1981.
Rehearing Denied May 29, 1981.[*]
*1338 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
M. Michele Fournet, John B. Comish, Frank J. Gremillion, Baton Rouge, for defendant-appellant.
LEAR, Justice Ad Hoc.[**]
Defendant Michael Watson was charged by bill of information with the July 26, 1979, armed robbery of Linda Burton, a violation of La.R.S. 14:64. Following trial before a twelve-member jury, defendant was convicted and sentenced to twenty years' imprisonment at hard labor. By this appeal, defendant urges five arguments as grounds for reversal of his conviction and sentence.
The record indicates that shortly after 9:30 a. m. on July 26, 1979, a masked assailant approached Linda Burton as she arrived at the Baton Rouge Burger King Restaurant which she managed. After stopping Ms. Burton, the assailant produced a BB pistol and demanded cash. Mistaking the weapon for a .38 calibre revolver, Ms. Burton surrendered her purse to the unknown male, who then fled on foot.
Several days later, investigating officers received information implicating the accused in the robbery of Ms. Burton. A former classmate of the defendant, Tad Hodges, informed police that he had loaned a BB pistol replica of a .38 calibre revolver to the accused shortly prior to the instant offense. When Hodges later questioned defendant as to the whereabouts of the pistol, defendant stated that it was in the back of a vehicle belonging to Danny Sides.
The police then followed up on this information by contacting Sides and asking him to report to police headquarters for questioning. In complying with this request, Sides confessed that he had driven the getaway vehicle involved in the heist, which had actually been perpetrated by the accused. Officers proceeded to contact the accused, who voluntarily appeared at police headquarters and admitted responsibility for the robbery.
Over defense objection, the accused and his co-defendant, Danny Sides, were subsequently tried in a single proceeding which utilized dual juries. During the course of this proceeding, the state adduced testimony from Ms. Burton concerning the factual setting of the robbery. However, because Ms. Burton was unable to identify her assailant, the prosecution was forced to rely upon the defendants' confessions to establish their complicity in the crime. To avoid confrontation problems under Bruton, the Sides jury was removed from the courtroom during testimony regarding appellant's confession and the Watson jury was removed during the introduction of Sides' confession.[1] *1339 In addition, the trial court made every effort to insure that there was no contact between the two juries, which remained separated throughout trial.[2]
Due to the admission of each defendant's confession, the only disputed issue at trial concerned the classification of the accused's BB pistol as a dangerous weapon. The Sides jury resolved this issue in the defendant's favor, convicting Sides of simple robbery. However, the Watson jury thought differently and convicted appellant of armed robbery.
ARGUMENTS NOS. II AND III
(Supplemental Assignments of Error Nos. 1, 2 and 3)[3]
In these arguments, defendant contends that the trial court erred in using two juries to try two separately-billed defendants in a single proceeding. As authority for this position the defense relies upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
In Bruton v. United States, supra, the prosecution had introduced in a joint trial the confession of one of the defendants. The trial court admitted the confession but cautioned the jury that it could not be considered as evidence against the codefendant. In reviewing this procedure, the Supreme Court held that the inculpating statements contained in the confession made the defendant a witness against his codefendant. As the defendant giving the confession chose not to testify, he was unavailable for cross-examination. In consequence the codefendant's sixth amendment right to confront the witness against him was violated.
Ever since Bruton was decided, trial judges have suggested various alternative procedures by which defendants might be tried jointly, even though one had given a statement to the police. Such alternatives have included: deletion of prejudicial references to a codefendant, see ABA Standards Relating to Joinder and Severance, § 2.3(a); use of a bifurcated joint trial, where the confession is withheld from evidence until the jury returns a verdict as to the implicated codefendant, United States v. Crane, 499 F.2d 1385 (6th Cir. 1974); and joint trials utilizing a separate jury for each defendant, with each jury hearing only that evidence admissible against the defendant as to whom it is to render a verdict, United States v. Sidman, 470 F.2d 1158 (9th Cir. 1972). By use of such procedures, various trial courts have sought to obey the command of Bruton while simultaneously achieving the substantial savings of judicial time that may be accomplished through a joint trial.

Propriety of Dual Jury Trial As Alternative to Severance
The use of dual juries to avoid the confrontation problems present in Bruton was first considered in United States v. Sidman, supra. In that case, the court found that exclusion of the Sidman jury during the introduction of his codefendant's confession effectively allowed Sidman a joint trial with his codefendant on all of the evidence that was admissible against both, and a separate trial on the evidence admissible only against him pursuant to Bruton. The court further stated that use of this procedure in no way deprived the accused of any constitutional or statutory rights to which *1340 he was entitled. Despite this conclusion, however, the Ninth Circuit Court declined to endorse such a dual jury procedure, instead holding only that Sidman had not been prejudiced as a result.
This court addressed a state request for the use of dual juries in the case of State v. Thomas, 319 So.2d 789 (La.1975). In Thomas, jointly indicted defendants were afforded an option to be tried under the jury provisions of the Constitution of 1921 (jury of five, all of whom must concur to render a verdict), or to elect trial under the jury provisions of the Constitution of 1974 (six-member jury, five of whom had to concur to render verdict). When each of these defendants elected a different mode of trial, the state proposed to preserve their joint trial by impaneling two separate juries.
In considering this request, the Thomas court noted that Louisiana's statutory law made no provision for such a dual jury procedure. While conceding that such a procedure might be ordered under its supervisory jurisdiction, the court felt that numerous complications could result, and that for this reason, separate trials were necessary.
Though not specifically mentioned by the Thomas court, it seems apparent that just the physical difficulties of seating and separating two juries in a single courtroom would require tremendous vigilance by the trial court. (In this case, the Sides jury was forced to occupy the front row of the courtroom.) The possibility of juror speculation as to the justification for such unique procedures could never be completely eliminated. In the case at bar, defendant Watson claims that the dual jury procedure prejudiced his case: (1) because his jury did in fact discover the substance of Sides' confession, and (2) because it forced speculation by his jury as to the verdict which would be returned by the Sides jury.
(a) Alleged Bruton Violation
The contention that Watson's jury actually discovered the existence of his codefendant's confession and its implication of defendant Watson formed the subject of defense motions for mistrial on at least two occasions during trial. See Assignments of Error Nos. 2 and 3. During its case-in-chief, the prosecution questioned Baton Rouge City Police Officer William Denicola as follows:
"Q Did you-uh-arrest either of the defendants?
A Yes, sir. I did.
Q You-uh-interrogated these defendants with reference to this incident?
A Yes, I did.
Q Both of `em?
A Yes, I did."
Following this line of questioning, both juries were excused and each defendant's counsel moved for a mistrial on grounds that this inquiry had undermined the very rationale for use of the dual jury procedure by informing each jury that both defendants had confessed their responsibility for the Burton robbery.
The other motion for mistrial came when, on the morning of the second day of trial, an article appeared in the Baton Rouge Morning Advocate concerning the unique nature of defendants' dual jury trial and explaining the reason why such joint trials of confessing codefendants are normally prohibited. Paragraph two of this article noted that both Sides and Watson had given written statements to the police in which they admitted that Watson had used a BB pistol during the holdup of Linda Burton.[4]
When polled at defense request, seven members of the Watson jury admitted seeing the article, though only two jurors had read much beyond the headline. However, when questioned further as to whether the article had supplied any information that was not already known, one of these jurors, a Mr. Jimmy R. Causey, specifically stated that he had not previously known that both defendants had signed confessions. Despite Causey's further disclaimer that this knowledge would not affect his verdict, it is clear that Causey's discovery had effectively undetermined *1341 the theory behind the dual jury trial. In fact, the very rationale behind the Bruton decision was that a trial court's instruction to disregard the inculpatory statement of a codefendant in determining the guilt or innocence of a jointly-tried defendant would be insufficient to cure the confrontation violation worked by such hearsay testimony.
Nevertheless, in case at bar, the Watson jury's discovery of Sides' confession does not warrant reversal of defendant's conviction. Under the rule of State v. Hopper, 253 La. 439, 218 So.2d 551 (1969), joint trial is permissible where the confessions involved are so substantially identical or interlocking as to minimize the risk of "prejudicial spillover" incrimination that the lack of ability to cross-examine is reduced to an insignificant level. See also State v. McSpaddin, 341 So.2d 868 (La. 1977); United States ex rel. Ortiz v. Fritz, 476 F.2d 37 (3d Cir. 1973), cert. denied, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973); State v. Stubbs, 239 So.2d 241 (Fla. 1970).[5]
In the instant case, the confessions of both Sides and Watson attributed the actual perpetration of the robbery to Watson while describing Sides as the driver of the getaway vehicle, while Watson's confession was more detailed as regards the details of the offense (Sides knew little of the actual robbery), there were no allegations contained in Sides' version of the robbery that were not admitted by Watson.[6] Thus, at least as to defendant Watson, the confessions at issue here are identical and could have been admitted even in a joint trial before a single jury without prejudice to the accused. For this reason, the mere fact that Watson's jury learned of Sides' confession during the course of their joint "dual jury" trial did not sufficiently prejudice Watson's defense as to merit reversal.[7]
(b) Speculation As To Verdict Of Sides' Jury
Conceding that the sole issue below was whether or not the unloaded BB pistol used in this offense constituted a dangerous weapon, appellant argues that his jury was coerced into returning a "guilty of armed robbery" verdict in order to ensure that Watson, whose actual involvement in the robbery was greater than that of Sides, would be convicted of at least as great a grade of the offense as would his codefendant. Thus, according to appellant, jury resolution of the dangerous weapon element in his favor would then trigger a secondary inquiry as to whether the Sides jury would reach a similar conclusion.
This contention constitutes pure conjecture of the part of appellant, there being no evidence to support the theory that Watson's jury failed to follow the trial judge's instruction that their verdict be based solely upon evidence adduced at trial. *1342 Normally, jurors' reasoning processes may be assailed only on the ground that the evidence adduced at trial was legally insufficient to support their finding of guilt; other inquiries into the deliberations of a properly instructed jury are generally frowned upon (as, for example, where the jury returns a lesser verdict despite the apparent sufficiency of the evidence to support conviction of a greater offense).[8]
In the present case, appellant makes no contention that the evidence was insufficient to support the conclusion that the BB pistol, as used in the Burton robbery, constituted a dangerous weapon.[9] Assuming this to be the case, the conclusions of the respective juries would appear readily supportable. Ms. Burton genuinely believed the weapon wielded by defendant Watson to be a .38 calibre revolver. The appellant's reckless behavior in pointing this replica of a .38 calibre revolver in Ms. Burton's face while demanding cash could easily be used to support the inference that defendant intended to create a "charged atmosphere" in which the possibility of death or great bodily harm existed. State v. Bonier, 367 So.2d 824 (La.1979); State v. Byrd, 385 So.2d 248 (La.1980). However, appellant's behavior did not support a similar inference of intent on the part of his codefendant Sides.[10] Sides played no role in procuring the weapon and his participation was limited to driving the vehicle used to aid appellant in his escape. Thus, in each instance, it cannot be forcefully argued that the jury verdicts were not motivated by a proper regard for evidence introduced at trial.
CONCLUSION
Since the appellant has failed to demonstrate prejudice arising out of the trial court's utilization of two juries to permit trial of the appellant and his codefendant in a single proceeding, it is presently unnecessary for the court either to approve or to reject such a dual jury procedure as a viable alternative to severance pursuant to Bruton. See United States v. Sidman, supra. However, it is clear that such a procedure is not specifically authorized under the Louisiana Code of Criminal Procedure. As vividly demonstrated in the instant case, this procedure also presents numerous physical and legal complications, the possible drawbacks of which would appear to argue against approval of this dual jury procedure in future cases.[11]
To select two juries to determine guilt or innocence of two defendants may suggest to the respective juries that the defendants should be treated differently or that perhaps one defendant may be more guilty than the other or more involved in the offense.
We must, therefore, discourage the utilization of "dual juries" until such time as the necessary guidelines are incorporated into our Code of Criminal Procedure.

DECREE
Accordingly, the conviction and sentence of the defendant, Michael Watson, are affirmed.
AFFIRMED.
NOTES
[*] Lemmon, J., concurs in denial of rehearing. Blanche, J., would grant a rehearing.
[**] Judges Covington, Chiasson and Lear of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Associate Justices Calogero, Marcus, Dennis and Blanche.
[1] Use of this dual jury procedure came at the state's request.
[2] Two distinct jury venires were used during the selection process. Twelve jurors were first impaneled to serve in the Watson case and then excused while selection of the Sides jury was completed. See R. pp. 4-6. The judge explained to each jury that there would be two juries, one to try the guilt or innocence of Watson and the other to try the guilt or innocence of Sides. The trial court further instructed the jurors that removal of one or both juries would be necessary from time to time during the course of trial and that they should not speculate as to reasons for their removal. During trial, the Watson jury was seated in the regular jury box while the Sides jury occupied the front row of the courtroom.
[3] Appellant's original brief presented only a single argument relating to the voluntary character of the accused's confession. For purposes of continuity, this contention, captioned Argument No. I, will be dealt with later. See discussion, infra.
[4] Actually, Sides gave only an oral statement to this effect.
[5] In reaching this conclusion, the Hopper court stated:

"Here, however, in the context of the circumstances presented, we have the codefendants' admissions standing side by side with each confessor acknowledging in his own confession the same criminal conduct ascribed to him by the other. The hearsay statements are corroborated by each codefendant's extrajudicial statement or vice versa. Under such a situation, it is wholly unnecessary to speculate whether the cautionary instructions of the judge may not have effectively prevented the jury from disassociating each confessor's inculpation of his codefendant in determining the latter's guilt. For, as we see it, the hearsay caused no injury and did not deprive either defendant of a substantial constitutional right because, if each defendant had taken the stand, it is difficult to perceive what benefit either could have gained by cross-examining the other anent the same criminal conduct to which each had already voluntarily confessed extrajudicially." 253 La. at 450, 218 So.2d at 554-555.
[6] Of course, Watson's jury did not know the precise text of Sides' confession, though the article contained in the Morning Advocate did state that Sides had given a written statement to the effect that Watson had perpetrated the Burton holdup. Since this information coincided with the admissions contained in Watson's own statement, there is no reason to distinguish Hopper here.
[7] In any event, Sides' confession had no bearing whatsoever on the "dangerous weapon" element which formed the sole controverted issue at the defendants' trial.
[8] Where there is evidence in the record to support conviction for a greater offense, this evidence will support conviction of a lesser offense which has been made responsive by the legislature so long as the elements of the lesser offense are included in the greater offense. State v. Booker, 385 So.2d 1186 (La.1980); cf. State v. Gisclair, 382 So.2d 914 (La.1980); State v. Qualls, 353 So.2d 978 (La.1978).
[9] Dangerous weapon is defined by La.R.S. 14:2(3) as an "instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." The dangerousness of the instrumentality by reason of the manner in which it is used is a question of fact for the jury to decide. State v. Murff, 215 La. 40, 39 So.2d 817 (1949).
[10] Under La.R.S. 14:24, not all principals are automatically guilty of the same grade of offense. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Holmes, 388 So.2d 722 (La. 1980).
[11] Had the confessions of the two defendants in this case failed to meet the rule set forth in Hopper, supra, a different result would have been necessary here.