4522                                      214 S. W. 2d 372

Opinion delivered October 18, 1948.

Rehearing denied November 22, 1948.

*Griffin Smith, Jr.,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E.* Ellis, Assistant Attorney General, for appellee.

Ed. F. McFADDIN, Justice. Mizell Palmer has appealed from a conviction of rape and sentence of death.[1] This being a capital case, § 4257, Pope's Digest,[2] prescribes the extent of the review. The motion for new trial contains four assignments; and the transcript discloses other objections made by the defendant. We will group and dispose of all the assignments and objections found in the record.

I. *Sufficiency of the Evidence.* This issue is presented by assignments 1, 2, and 3 in the motion for new trial and also by the defendant's objection to the court's refusal to instruct a verdict of not guilty. On the night of October 19, 1947, the prosecuting witness and her male escort were riding in an automobile, and stopped when a tire sustained a puncture. The woman remained seated while the man got under the car to inspect the tire. At that time the defendant and one Charles Hamm, each armed with a pistol, approached them and robbed them, taking $6 from the man and $20 and a purse from the woman. While Hamm held the man at the point of a gun, Palmer raped the woman. Then Palmer held the gun on the man while Hamm raped the woman. In each instance her resistance was overcome by her fear of the firearm.

Thereafter, the defendant and Hamm departed; and the lady and her escort quickly gave the alarm to the officers. Many suspects were viewed by the lady at various times, but she made no identification until she saw the defendant in the line of men in custody on December 5, 1947—the day the defendant was arrested. At the trial the lady again unequivocably identified the defendant and testified to the facts hereinbefore detailed. There was testimony to show actual penetration, force, and lack of consent. The evidence satisfied the statutory provision of "carnal knowledge of a female, forcibly, and against her will." We have many times held that in a rape case the testimony of the prosecuting witness does not have to be corroborated. *Hodges* v. *State,* 210 Ark.

---

[1] Pope's Digest, § 3403 *et seq.* and 4 Ark. Stats. §§ 41-3401 *et seq.* define the offense and state the punishment, which is death or life imprisonment as the jury may determine.

[2] 4 Ark. Stats. § 43-2723.

672, 197 S. W. 2d 52, and *Bradshaw* v. *State*, 211 Ark. 189, 199 S. W. 2d 747, are two recent cases on this point. In the case at bar a factual question was presented to the jury independent of the corroboration, and independent of the alleged confession. In short, the evidence is sufficient to support the verdict.

II. *The Admissibility of the Defendant's Alleged Confession.* This issue is presented by assignment No. 4 in the Motion for New Trial, and also by the defendant's repeated objections, as found in the record. Palmer was taken into custody about 11 a. m., December 5, 1947, by two deputy sheriffs, and within a few minutes was taken to the Pulaski county jail. Sometime during the noon hour he was identified by the prosecuting witness from a line of five or six men. About 1 p. m. the two arresting officers told Palmer that the lady had identified him; and within fifteen minutes he confessed to them that he was guilty of the robbery and the rape. Later the defendant confessed to the Deputy Prosecuting Attorney; and still later, he confessed to the Prosecuting Attorney who had Palmer's statements taken down and transcribed. He assured the Prosecuting Attorney that the confession was voluntary and made without any threats against or promises to him.

At the trial the defendant insisted that all the confessions were extorted from him by the beating and threatening of the two arresting officers. Also the defendant's counsel (appointed by the trial court, and filing the brief here) duly objected at every stage of the proceedings to the admission of the confession in evidence. The claim was made below, and is renewed here, that the defendant was (1) arrested without a warrant, (2) not taken before a committing magistrate as required by § 3729, Pope's Digest,[3] (3) held from 11 a. m. until after 1 p. m. of December 5, and (4) then questioned by the officers. Because of these matters, it is urged that the defendant did not enjoy that due process of law guaranteed by the 14th Amendment to the U. S. Constitution; and it is sought to bring this case within the claimed

---

[3] 4 Ark. Stats. § 43-601.

purview of the holdings of the U. S. Supreme Court in the case of *Ashcraft* v. *Tennessee*,[4] *Malinski* v. *New York*,[5] and *Haley* v. *Ohio*.[6]

In the case of *State* v. *Browning*, 206 Ark. 791, 178 S. W. 2d 77, we held that the failure (1) to have a warrant of arrest and (2) to take the accused before a committing magistrate did not prevent the confession made to the officers from being admissible in evidence if the jury found the confession to have been voluntarily made. We also held that a jury question was presented as to whether the confession was voluntary; and we quoted with approval the statement from Wharton's Criminal Evidence, 11th Ed., Vol. 2, p. 1023, § 610: " 'The mere fact that a confession is made while the maker is in the custody of a police officer, or even while confined under arrest, is not sufficient of itself to affect its admissibility, providing that it is otherwise voluntarily made. This rule pertains equally whether the arrest is legal or illegal.' "

In a concurring opinion in the Browning case, this language appears: "Sooner or later the United States Supreme Court may be asked to extend the holding of the McNabb case to every case where the defendant claims the benefits of the Fourteenth Amendment to the Constitution of the United States. When that question is decided by the United States Supreme Court it will be time enough for the Arkansas Supreme Court to consider changing our holding on this point to conform to the federal holding. If the rule in the McNabb case is so extended by the United States Supreme Court to apply to any cases where the Fourteenth Amendment is invoked, then will be the proper time for us to review our holdings . . . ."

Appellant says that the time has arrived to review not only our former holdings, but also to overrule *State* v. *Browning*;[7] and claims that subsequent rulings of the

---

[4] 322 U. S. 143, 88 L. Ed. 1192, 64 S. Ct. 921.

[5] 324 U. S. 401, 89 L. Ed. 1029, 65 S. Ct. 781.

[6] 332 U. S. 596, 68 S. Ct. 302.

[7] *State* v. *Browning*, 206 Ark. 791, 178 S. W. 2d 77, has been cited and adhered to in *Hall* v. *State*, 209 Ark. 180, 189 S. W. 2d 917 and in *Thomas* v. *State*, 210 Ark. 398, 196 S. W. 2d 486.

U. S. Supreme Court make this mandatory. Appellant's counsel says of our holding in *State* v. *Browning*: "The Browning case was, in view of federal decisions, to its date, correctly decided. Since the opinion was rendered, however, all law on the subject has been revolutionized by *Ashcraft* v. *Tennessee*." [8] This statement of counsel is bottomed on a thorough familiarity with the earlier cases of *Brown* v. *Mississippi*,[9] *Chambers* v. *Florida*,[10] *McNabb* v. *U. S.*,[11] and *Anderson* v. *U. S.*,[12] and necessitates consideration only of the Ashcraft and subsequent cases, of which there are two, being *Malinski* v. *New York*[13] and *Haley* v. *Ohio*.[14] We therefore proceed to review and compare the facts in these three cases with those in the case at bar, because the rationale of the holdings of the United States Supreme Court, on the question of the voluntary nature of a confession, when the due process clause is claimed by the defendant, seems to indicate that each case turns on its own particular facts:

(A) In *Ashcraft* v. *Tennessee*[15] a purported confession was introduced in evidence in the trial of Ashcraft for murder. The trial judge instructed the jury to disregard the confession unless the jury found it to have been made voluntarily. Ashcraft was convicted, and on appeal to the Supreme Court of Tennessee, the conviction was sustained. The U. S. Supreme Court, entertaining jurisdiction under the due process clause of the Fourteenth Amendment, proceeded to examine the evidence to determine whether the confession was voluntary and said: "Our duty to make that examination could not have been 'foreclosed by the finding of the court, or the verdict of a jury or both.' *Id.* We proceed therefore to consider the evidence relating to the circumstances out of which the alleged confessions came."

[8] 322 U. S. 143, 88 L. Ed. 1192, 64 S. Ct. 921.

[9] 297 U. S. 278, 80 L. Ed. 682, 56 S. Ct. 461.

[10] 309 U. S. 227, 84 L. Ed. 716, 60 S. Ct. 472.
[11] 318 U. S. 332, 87 L. Ed. 819, 63 S. Ct. 608.

[12] 318 U. S. 350, 87 L. Ed. 829, 63 S. Ct. 599.
[13] 324 U. S. 401, 89 L. Ed. 1029, 65 S. Ct. 781.

[14] 332 U. S. 596, 68 S. Ct. 302.

[15] 322 U. S. 143, 88 L. Ed. 1192, 64 S. Ct. 921.

The U. S. Supreme Court then found that Ashcraft had been examined continuously for 36 hours; that for the first 28 hours he maintained his innocence; that finally he weakened under the grueling and continuous examination, and made the alleged confession. Here is one statement from the opinion: "For thirty-six hours after Ashcraft's seizure during which period he was held incommunicado, without sleep or rest, relays of officers, experienced investigators, and highly trained lawyers questioned him without respite."

Repeatedly in the majority opinion, the U. S. Supreme Court refers to the 36 hours of continuous questioning. The length of time of examination seems to have been the controlling factor; and if that be the test, then the case at bar is not within the rule of the Ashcraft case because, here, the accused (1) was arrested at 11 a. m., (2) was viewed and identified between 12 noon and 1 p. m., (3) was questioned by the officers at 1 p. m. for ten or fifteen minutes, and (4) then confessed when truthfully informed that the lady had identified him. There was no lengthy examination. Furthermore, the confession to the Deputy Prosecuting Attorney was almost instantaneous, as also was the one to the Prosecuting Attorney. There is entirely absent from this record —except for the unsupported statements of the accused— any evidence of coercion or grueling and continuous questioning. So we hold that the case at bar is not ruled by *Ashcraft* v. *Tennessee*[16] because facts pointed out in that case, as fatal to the confession being voluntary, are not present here.

(B) In *Malinski* v. *New York*[17] there was also the question of the admissibility of a confession. The U. S. Supreme Court's statement reflects the facts: "Malinski was arrested while on his way to work on the morning of Friday, October 23, 1942. The police did not then arraign him but took him to a room in the Bossert Hotel in Brooklyn where he arrived about 8 a. m. He was immediately stripped and kept naked until about 11 a. m. At that time he was allowed to put on his shoes, socks

[16] 322 U. S. 143, 88 L. Ed. 1192, 64 S. Ct. 921.
[17] 324 U. S. 401, 89 L. Ed. 1029, 65 S. Ct. 781.

and underwear and was given a blanket in which to wrap himself. He remained that way until about 6 p. m. Malinski claims he was beaten by the police during that period. The police denied this. There was no visible sign of any beating, such as bruises or scars; and Malinski made no complaint to the judge on arraignment nor to the jail authorities where he was later held. Sometime during Friday morning Spielfogel was brought to the hotel. He and Malinski were put alone together in a room sometime that afternoon. Shortly after their conference—apparently around 5:30 p. m. or 6:00 p. m.—Malinski confessed to the police.''

The opinion also gives an excerpt from the prosecutor's summation to the trial jury. We copy further from the opinion: ''If that evidence alone is not sufficient to show that that confession was coerced, the comments of the prosecutor place it beyond doubt. For in his summation to the jury he made certain statements which the Court of Appeals said were 'indefensible' (292 N. Y. 373, 55 N. E. 2d 353) and which we think are sufficient to fill in any gaps on the record before us and to establish that this confession was not made voluntarily. He said that Malinski 'was not hard to break'; that 'He did not care what he did. He knew the cops were going to break him down.' And he added: 'Why this talk about being undressed? Of course, they had a right to undress him to look for bullet scars, and keep the clothes off him. That was quite proper police procedure. That is some more psychology—let him sit around with a blanket on him, humiliate him there for a while; let him sit in the corner, let him think he is going to get a shellacking.' If we take the prosecutor at his word, the confession of October 23d was the product of fear—one on which we could not permit a person to stand convicted for a crime.''

In the Malinski case,[18] following the arrest and before the confession, there was: (1) a three-hour period of nakedness, (2) then a ''blanket covering'' for several hours, (3) a long delay to ''let him think that he was going to get a shellacking,'' and (4) a ''stool pigeon''

[18] 324 U. S. 401, 89 L. Ed. 1029, 65 S. Ct. 781.

brought in to give mock advice. The foregoing facts—evidently regarded as of controlling importance by the U. S. Supreme Court—are all absent in the case at bar. Here, as previously recited, the accused was promptly lodged in jail, and promptly confessed after being identified by the lady; so, in its cardinal facts, the Malinski case is entirely dissimilar from the case at bar.

(C) In *Haley v. Ohio* [19] a Negro boy, 15 years of age, was arrested at midnight and questioned. His alleged confession was introduced in evidence against him. Here is the essential statement found in the majority opinion of the U. S. Supreme Court: "Beginning shortly after midnight this 15-year-old lad was questioned by the police for about five hours. Five or six of the police questioned him in relays of one or two each. During this time no friend or counsel of the boy was present. Around 5 a. m. —after being shown alleged confessions of Lowden and Parks—the boy confessed."

The United States Supreme Court reviewed the entire record to determine whether the confession was voluntary. This is the language of the opinion: "But the ruling of the trial court and the finding of the jury on the voluntary character of the confession do not foreclose the independent examination which it is our duty to make here. *Ashcraft v. Tennessee,* 322 U. S. 143, 148, 88 L. Ed. 1192, 64 S. Ct. 921. If the undisputed evidence suggests that force or coercion was used to exact the confession, we will not permit the judgment of conviction to stand even though without the confession there might have been sufficient evidence for submission to the jury. *Malinski v. New York, supra* (324 U. S. 404, 89 L. Ed. 1032, 65 S. Ct. 781), and cases cited."

On such review the U. S. Supreme Court concluded that the questioning of the 15-year-old boy for four or five hours in the night time rendered the confession involuntary, saying: "Age 15 is a tender and difficult age for a boy of any race. He cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overawe and overwhelm

[19] 332 U. S. 596, 68 S. Ct. 302.

a lad in his early teens. This is the period of great instability which the crisis of adolescence produces. A 15-year-old lad, questioned through the dead of night by relays of police, is a ready victim of the inquisition. Mature men possibly might stand the ordeal from midnight to 5 a. m. But we cannot believe that a lad of tender years is a match for the police in such a contest. He needs counsel and support if he is not to become the victim first of fear, then of panic. He needs someone on whom to lean lest the overpowering presence of the law, as he knows it, may not crush him.''

Youth, midnight arrest, and continuous questioning by officers for four or five hours are facts which are entirely absent from the case at bar. Here, the accused was a man 23 years of age, who had served in the Armed Forces. He was arrested at 11 a. m. and held two hours without questioning. He then confessed after ten or fifteen minutes of questioning. We are convinced that what caused the confession was not the questioning by the officers, but the knowledge, truthfully imparted to the defendant, that the lady had positively identified him, just as she did before the jury. In all events the holding of the U. S. Supreme Court in the Haley case does not require us to reverse our long established rule as reflected in *State* v. *Browning*.[20]

As we have previously observed, the rationale of the holdings of the U. S. Supreme Court, on the question of the admissibility of a confession, seems to be that the result in each case must turn on its own particular facts which the Supreme Court of the United States determines independently of the conclusion reached by any other fact finding agency or judicial tribunal. We have reviewed in considerable detail the Ashcraft, the Malinski, and Haley cases in order to ascertain whether the facts, regarded as salient by the U. S. Supreme Court in those cases, are similar to those in the case at bar. We conclude that the facts here are so different from those in the three reviewed cases that those cases afford no sufficient justification for overruling our own long line

---

[20] 206 Ark. 791, 178 S. W. 2d 77.

of opinions. We adhere to the ruling in *State* v. *Browning, supra,* and reject appellant's contention.

III. *Refusal of the Trial Court to Reduce Palmer's Sentence to Life Imprisonment.* Mizell Palmer and Charles Hamm were jointly charged with rape. The record does not show any order of severance; but it is fairly inferable that one or the other of the accused obtained a severance.[21]  Only Mizell Palmer was on trial in the case here involved. The trial and jury verdict were on May 13. On May 14, the Motion for New Trial was filed and overruled, and 45 days were given for the Bill of Exceptions. On May 20, the death sentence was pronounced on Palmer in keeping with the jury verdict. Then on June 7, Palmer's attorney filed in the Circuit Court a pleading denominated "Motion to Reduce Sentence," which, omitting caption and superscription, reads:

"Defendant Mizell Palmer moves the Court to reduce his sentence, for grounds stating:

"1.  Co-defendant Charles Hamm, jointly charged and separately tried, was found guilty of the identical offense by a jury drawn from a separate panel, and his punishment fixed at life imprisonment; whereas defendant Mizell Palmer was sentenced to death.

"2.  The verdict returned in defendant Palmer's case must necessarily have been the result of passion and prejudice by the jury, caused by reading of the alleged confession.

"3.  Defendant Mizell Palmer's sentence is excessive, and he has been denied equal protection of the law and privileges and immunities of citizenship guaranteed by the 14th Amendment to the Constitution of the United States.

"Wherefore, defendant Mizell Palmer prays that his sentence be reduced to life imprisonment; and that the record of trial of both defendants be consolidated for purpose of appeal."

---

[21] Concerning Severance, see § 3976, Pope's Digest, Act No. 209 of 1945; and 4 Ark. Stats. § 43-1802.

This motion was in all things overruled by the Circuit Court on June 9; and the ruling on such motion is assigned as the error presented in this topic heading. When a severance is granted, the trial against each defendant proceeds entirely independently of the other. The record of the trial in the case of *State* v. *Hamm* is not before us; and we have no information as to what particular facts and defenses were presented in that case. Palmer has not tendered us, either by supplemental bill of exceptions or otherwise, the record in the Hamm case: so, we do not know Hamm's mental condition or any other factor that might have appeared in evidence in that case to cause the jury to find him guilty or to fix his sentence at life imprisonment. The Arkansas law [22] allows the trial jury to determine the punishment in rape cases at either death or life imprisonment; and the punishment allotted to Palmer was within the limits allowed by law. So, we cannot say that the punishment was excessive or unjust; and this disposes of the first two items in appellant's Motion to Reduce Sentence.

Finally, appellant says that Palmer was denied equal protection under the 14th Amendment to the U. S. Constitution since Palmer received the death sentence and Hamm received only life imprisonment. We find no merit in this contention. The case of *Howard* v. *Fleming* [23] is decisive, and is against the appellant. In that case, Howard and other defendants were jointly indicted *and tried* in North Carolina on a charge of conspiracy to defraud. All three defendants were convicted; one defendant was sentenced to seven years, and the other two were sentenced, each, to ten years. The two defendants receiving the 10-year sentences claimed that the longer sentences denied them the equal protection of the law under the 14th Amendment—the same argument here made by Palmer. Mr. Justice Brewer delivered the opinion of the U. S. Supreme Court, and thus clearly stated the contention and the Court's holding against it: "Again, it is contended that the defendants were denied the equal protection of the laws, . . . in that two

[22] Pope's Digest, § 3403 *et seq.*; and 4 Ark. Stats. § 41-3401 *et seq.*
[23] 191 U. S. 126, 48 L. Ed. 121; 24 S. Ct. 49.

were given ten years' and the third only seven years' imprisonment, . . . That for other offenses, which may be considered by most, if not all, of a more grievous character, less punishments have been inflicted, does not make this sentence cruel. Undue leniency in one case does not transform a reasonable punishment in another case to a cruel one.''

The jury trying Mizell Palmer returned a verdict of guilty and a death sentence which is authorized by the Arkansas statute. The trial judge rendered judgment in accordance with the verdict. We find no reversible error and affirm the judgment.

Robins, J., dissents.

Robins, J., dissenting. In my opinion a material portion of the evidence in this case—all that part pertaining to the alleged oral confession made by appellant to the officers—was inadmissible.

It is not disputed that appellant was taken into custody and held without any warrant of arrest and was not ''forthwith'' taken before a magistrate, as required by the provisions of § 3729, Pope's Digest. During the time he was thus illegally detained the alleged confession was obtained.

My views on the inadmissibility of such a confession are set forth fully in my dissenting opinion in the case of *State* v. *Browning,* 206 Ark. 791, 178 S. W. 2d 77; and it is unnecessary to reiterate them here. Some recent decisions of the Supreme Court of the United States which support these views are: *Ashcraft* v. *State of Tennessee,* 322 U. S. 143, 88 L. Ed. 1193, 64 S. Ct. 921, and *Haley* v. *State of Ohio,* 332 U. S. 596, 68 S. Ct. 302.

The confession was obtained through a violation of appellant's rights under the statute above cited and under the ''due process'' clauses of the state and federal constitutions. Therefore it ought not to have been received in evidence.

Courts should see to it that every accused person receives in full measure the protection that our federal

and state constitutions, as well as our statutes, provide for him; and neither heinousness of the crime with which he is charged nor apparent obviousness of his guilt ought ever to swerve us from this high duty.