Rebecca WOOLBRIGHT and Carl Allen Johnson *v.*
STATE of Arkansas

CR 03-170 160 S.W.3d 315

Supreme Court of Arkansas
Opinion delivered April 22, 2004

[Rehearing denied May 27, 2004.*]

---

* CORBIN, THORNTON & HANNAH, JJ., would grant rehearing (WOOLBRIGHT); DICKEY, C.J., & GLAZE, J., would grant rehearing (STATE).

*Julia Llewellyn Ketcham*, for appellant Rebecca Woolbright.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant Carl Allen Johnson.

*Mike Beebe*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellants Rebecca Woolbright and Carl Allen Johnson were convicted for the murder of Carrell Cahoon following a trial in which two separate juries were impaneled. One jury found Ms. Woolbright guilty of first-degree murder and sentenced her to a term of life imprisonment; whereas, the other jury found Mr. Johnson guilty of second-degree murder and sentenced him to forty-years' imprisonment. On appeal, Ms. Woolbright contends there was insufficient evidence to support her conviction and the dual jury denied her right to a fair trial. For his points of error on appeal, Mr. Johnson contends that the trial court erred in employing the dual-jury procedure and erred in denying his pretrial motion to suppress. Though Justices Corbin, Thornton, and

Hannah would reverse on the dual-jury issue for both appellants, a majority of the court agrees to affirm both convictions on this point. As to the appellants' differing claims of error, we also affirm Ms. Woolbright's conviction and sentence on her sufficiency challenge; however, we hold that the trial court erred in denying Mr. Johnson's motion to suppress and reverse and remand his conviction and sentence. Chief Justice Dickey and Justice Glaze would affirm Mr. Johnson's conviction on the suppression issue. In sum, we affirm Ms. Woolbright's conviction and sentence, but reverse and remand Mr. Johnson's conviction and sentence.

The State filed an amended information jointly charging Mr. Johnson and Ms. Woolbright with the offenses of first-degree murder. According to Mr. Johnson's theory of the case, he had been framed by Ms. Woolbright. He anticipated that the State would attempt to introduce out-of-court statements made by Ms. Woolbright implicating Mr. Johnson that would be inadmissible against him; thus, he immediately filed a motion to sever pursuant to Arkansas Rule of Criminal Procedure 22.3 (2003). Ms. Woolbright did not join in that motion. The State initially offered to redact those portions of Ms. Woolbright's statements that mentioned Mr. Johnson or, in the alternative, to elect not to introduce the statements. After conducting a hearing on this issue, the court conditionally denied the severance motion.

Two months later, the court conducted a second hearing on the issue of severance. After the State offered redacted versions of Ms. Woolbright's statements, the court concluded that the proposed redactions were not sufficient so as to prevent prejudice to Mr. Johnson. The State, however, declined to take the case to trial without Ms. Woolbright's taped statements. Ms. Woolbright then joined in Mr. Johnson's motion to sever, and the circuit court granted a severance on November 7, 2002. Later that same day, upon the State's request, the court conducted another hearing for purposes of clarity on the severance issue.

During that hearing, the State suggested that the court employ a dual-jury procedure; that is, the State proposed that the court conduct a single trial with one jury impaneled to hear the case against Ms. Woolbright and a separate jury impaneled to hear the case against Mr. Johnson. The State explained that a jury could be sequestered during portions of the trial when that particular jury needed to be insulated from the evidence. Both defendants objected to the dual-jury procedure, whereupon the court asked counsel to collect information on the State's proposal and report

back the following day. When court reconvened the next day, neither defendant could cite a rule that prohibited the use of a dual-jury procedure. Both defendants, however, continued to object to the procedure.

The court and the parties then discussed the logistics of using two separate juries at the same trial. First, the court considered voir dire. Both defendants requested that voir dire be done separately while the State argued that voir dire be conducted together. The court ruled that if it used the dual jury, it would conduct voir dire separately. All parties agreed that opening and closing statements would have to be done separately. As to whether or not the juries should be instructed at the same time, the parties conceded that the court would have to reserve its ruling on that issue until the close of all of the evidence. The court ultimately granted the State's motion for separate juries. Mr. Johnson then requested that his jury be excused from any defense presented by Ms. Woolbright. The court declined to sequester one jury during either defendant's case-in-chief, but specifically reserved its right to change that ruling.

At the trial, which began on November 12, 2002, the voir dire for each jury was conducted separately. Then, upon the selection of each venire, the court explained that both Mr. Johnson and Ms. Woolbright were charged in the case and that each defendant would have a separate jury. The court also told the two juries that they would be differentiated by number, with Mr. Johnson's jury wearing stickers with the number one printed on them and Ms. Woolbright's jury wearing stickers with the number two printed on them. Jurors were specifically instructed not to discuss the case or associate in any way with any members of the other jury. Finally, the courtroom had been rearranged to accommodate both juries.

The trial began with the State making its first opening statement to Mr. Johnson's jury. After an opening statement by Mr. Johnson's counsel, his jury was excused. Then opening statements for the Woolbright case were made to her jury separately. Next, the State presented the bulk of its case-in-chief in front of both juries. At the point in the trial when the State had completed its case except for introducing the statements by each defendant, the court conferred with counsel outside the presence of both juries.

The State explained that it still needed to recall one detective to play Ms. Woolbright's two taped statements outside the pres-

ence of Mr. Johnson's jury. The detective would also be called to testify outside the presence of Ms. Woolbright's jury about statements made by Mr. Johnson. Mr. Johnson indicated that his defense would be limited to recalling one of the State's witnesses. His earlier cross-examination of that witness had been restricted due to the presence of both juries. Ms. Woolbright also indicated that she might call witnesses in her defense.

Following the removal of Ms. Woolbright's jury, the State called the detective as its final witness and rested its case against Mr. Johnson. Mr. Johnson recalled one of the State's earlier witnesses for cross-examination and then rested. At that time, Mr. Johnson's jury was excused and directed to return later that day. Next, Ms. Woolbright's jury was brought into the court room, and the State proceeded through testimony by the detective to introduce Ms. Woolbright's taped statements. After the State rested its case-in-chief against Ms. Woolbright, she called one witness in her defense and then rested.

Outside the presence of both juries, the court and counsel discussed jury instructions. They decided that the same initial set of jury instructions would be given to both juries. When the court reconvened, both juries were instructed on the law at the same time. The court then directed the juries to return the next day to hear closing arguments and begin deliberations, with specific directions that Mr. Johnson's jury return at 9:00 a.m. and Ms. Woolbright's jury return at 10:30 a.m. The following morning, the two juries sitting separately and independently heard closing arguments and final jury instructions for the guilt phase of the trial. Consequently, Mr. Johnson's jury retired first to deliberate on the issue of guilt.

While Ms. Woolbright's jury was still out deliberating, Mr. Johnson's jury returned with its verdict, finding him guilty of second-degree murder. Shortly thereafter, the court conducted a separate sentencing phase of the trial. After all the evidence was submitted, Mr. Johnson's jury was instructed and retired to deliberate. Ms. Woolbright's jury then returned with its verdict finding her guilty of first-degree murder. The court conducted a separate sentencing phase in Ms. Woolbright's trial, instructed her jury, and sent them out to deliberate.

Mr. Johnson's jury subsequently returned with its verdict that fixed his sentence at forty years in prison and a fine of $15,000. After the sentence was read, the court informed Mr. Johnson's jury that Ms. Woolbright's jury had found her guilty of first-degree

murder and was still deliberating on the sentence. He excused the panel but advised the jurors that they could remain in the courtroom for Ms. Woolbright's sentencing if they so desired. Thereafter, Ms. Woolbright's jury returned with its verdict that fixed her sentence at a term of life imprisonment. The court informed Ms. Woolbright's jury of the findings by Mr. Johnson's jury and then excused the panel.

Both defendants filed timely notices of appeal. Each defendant has filed a separate brief, and while they both argue that the circuit court erred in impaneling two juries, their other points on appeal are separate and independent. Specifically, Ms. Woolbright challenges the sufficiency of the evidence to support her conviction, whereas Mr. Johnson challenges the circuit court's ruling on his pretrial motion to suppress.

*I. Sufficiency of the Evidence — Ms. Woolbright*

For purposes of double jeopardy, we address Ms. Woolbright's challenge to the sufficiency of the evidence first. *See Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003). For her first point on appeal, Ms. Woolbright argues that there is insufficient evidence to support her conviction of first-degree murder. In her second point, she contends that the trial court erred in refusing to grant her motion for a directed verdict. This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Mills v. State,* 351 Ark. 523, 95 S.W.3d 796 (2003). Thus, Ms. Woolbright's first two points on appeal are a challenge to the sufficiency of the evidence and will be addressed together.

In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Garner v. State,* 355 Ark. 82, 131 S.W.3d 734 (2003). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

The record reflects the following evidence. On March 14, 2002, Rebecca Woolbright and Carrell Cahoon went to the Inn Towne Lodge in Fort Smith to pick up Carl Allen Johnson. At that time, Mr. Johnson was living in a motel room at the Inn Towne Lodge. Mr. Cahoon was driving his vehicle and proposed that they

all go to a wooded area behind the Southside High School to retrieve some copper that Mr. Cahoon had stolen from an electrical company. The three were going to sell the copper and split the proceeds. Prior to retrieving the copper, Mr. Cahoon was murdered.

Ms. Woolbright and Mr. Johnson left Mr. Cahoon in the woods after he had been stabbed in the back six times and bludgeoned in the head with a metal object. They abandoned Mr. Cahoon's vehicle in a Wal-Mart parking lot and returned to the Inn Towne Lodge. Ms. Woolbright later called her friend, Terri Godwin, and told her of the murder. Ms. Godwin called the Forth Smith Police Department the next day, March 15, and advised them that a homicide may have occurred, the victim's name was Cal or Calvin, and someone named Carl might be involved.

On the same day that Ms. Godwin called the police, Ms. Woolbright gave a statement to the police implicating Mr. Johnson in the murder and then she led police to the victim's body. She also gave a taped statement in which she admitted being present when the murder occurred. She had gone into the woods to look for the copper and then heard Mr. Cahoon scream for help. When she returned, Mr. Johnson was stabbing Mr. Cahoon in the back and later hit him in the head with a metal pipe. According to Ms. Woolbright, she did not know Mr. Johnson was going to kill Mr. Cahoon. On March 22, 2002, she gave a second taped statement. In this statement, Ms. Woolbright stated she was upset with Mr. Cahoon and wanted him dead. She planned on stabbing him when they went out in the woods. Upon reaching the wooded area, Ms. Woolbright told Mr. Cahoon that she was going to kill him and brandished a knife. Because he laughed at her threat, she handed the knife to Mr. Johnson. He then proceeded to stab Mr. Cahoon in the back.

Ms. Woolbright was charged with first-degree murder and as an accomplice to first-degree murder. She was convicted of first-degree murder. In Arkansas, first-degree murder is defined in pertinent part as follows:

> (a) A person commits murder in the first degree if:
>
> (2) With a purpose of causing the death of another person, he causes the death of another person.

Ark. Code Ann. § 5-10-102 (Repl. 1997). The accomplice liability statute in Arkansas states as follows:

(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

\* \* \* \*

(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense, he:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result;

Ark. Code Ann. § 5-2-403 (Repl. 1997).

At trial, Dr. Stephen Erickson, an associate medical examiner with the Arkansas State Crime Laboratory, testified that he performed the autopsy on Carrell Cahoon. Dr. Erickson concluded that Mr. Cahoon's death was the result of a homicide caused by severe blunt force trauma to the head and stab wounds to his back. Rebecca Woolbright's neighbor, Terri Godwin, testified that she called Detective Lannie Reese on March 15, 2002, after Ms. Woolbright told her that Mr. Cahoon had been killed. She told the detective that Ms. Woolbright had called and said "we killed Cal." Ms. Godwin also disclosed that Ms. Woolbright told her on March 14, the day of the murder, that she wanted Mr. Cahoon dead. According to Ms. Godwin, Ms. Woolbright confessed to stabbing the victim.

Furthermore, Ms. Woolbright gave two recorded statements in which she admitted to being at the crime scene. In one of those statements she told the police that she intended to kill Cahoon but was unable to muster the strength. She also acknowledged handing the murder weapon to Mr. Johnson after he stated that he would kill Mr. Cahoon.

Ms. Woolbright first contends that "mere presence at the scene of the crime or failure to inform law enforcement officers of a crime does not make one an accomplice as a matter of law." *Spears v. State,* 280 Ark. 577, 660 S.W.2d 913 (1983). In this case, the evidence not only reflects that Ms. Woolbright was present at the crime scene, but it also indicates that she either stabbed Mr. Cahoon or threatened to kill him and then handed the murder weapon to her accomplice, Mr. Johnson.

■■ Ms. Woolbright essentially takes exception to the quality of evidence submitted by the State. She suggests that the taped statements were made while she was extremely overwrought and that Ms. Godwin's testimony is not credible. The credibility of witnesses is an issue for the jury and not the court. *Barrett v. State,* 354 Ark. 187, 119 S.W.3d 485 (2003). Viewed in the light most favorable to the State, Ms. Woolbright confessed to either murdering or aiding in the murder of Mr. Cahoon. In addition, the evidence reflects that Mr. Cahoon died as a result of a homicide. Under these circumstances, there is sufficient evidence to support the verdict. *See, e.g., Tinsley v. State,* 338 Ark. 342, 993 S.W.2d 898 (1993) (holding that a confession and the *corpus delecti* of the crime establishes sufficient evidence).

## II. Dual Juries

Both appellants join in arguing that it was reversible error for the circuit court to impanel dual juries. Yet, each approaches the issue differently. Ms. Woolbright maintains the dual jury denied her constitutional right to a fair trial. Mr. Johnson, on the other hand, makes a two-prong attack on the dual-jury procedure. He first contends that the circuit court abused its discretion by operating in excess of its authority and in direct contravention of the Arkansas Rules of Criminal Procedure. Second, Mr. Johnson maintains that the dual-jury procedure used in this case was fraught with confusion and uncertainty such that he was denied a right to a fair trial under Arkansas law and the Arkansas Rules of Criminal Procedure.

### 1. Right to a Fair Trial — Ms. Woolbright

At the outset, Ms. Woolbright concedes that the Sixth Amendment to the United States Constitution does not completely prohibit the use of a dual jury. *See United States v. Sidman,* 470 F.2d 1158 (9th Cir. 1972); *see also Gray v. Maryland,* 523 U.S.

185 (1998) (explaining that the prosecutor can use separate trials or separate juries when seeking to admit the confession of a codefendant). Nonetheless, she asserts that in her case, the court did not follow the proper procedures necessary to fairly employ a dual jury. Specifically, Ms. Woolbright contends that she was prejudiced when the circuit court allowed "powerfully incriminating evidence against [Mr. Johnson] who was tried along with her [to be spread] before the [separate] jury charged with determining [her] guilt or innocence." She suggests that such evidence was admissible against Mr. Johnson but not against her. Thus, the underpinning of Ms. Woolbright's argument relates to whether inadmissible evidence was admitted against her due to the dual jury.

██ ██ As support for this argument, Ms. Woolbright claims the testimony of Dr. Stephen Erickson and "the other State Crime Lab witnesses, [Phillip Rains and Melissa Myhand]," was inadmissible against her. Yet, she never objected to the testimony of these witnesses. Indeed, at trial, Ms. Woolbright fully cross examined Dr. Erickson and Mr. Rains. This court has long held that to preserve an argument for appeal, there must be an objection in the trial court that is sufficient to apprise the court of the particular error alleged. *Banks v. State,* 354 Ark. 404, 125 S.W.3d 147 (2003). Now, she argues for the first time that the forensic evidence from the Arkansas State Crime Laboratory witnesses was irrelevant and inadmissible. This court does not address arguments made for the first time on appeal. *See Ellison v. State,* 354 Ark. 340, 123 S.W.3d 874 (2003). Because the basis for Ms. Woolbright's claim of error is not preserved, we affirm.

### 2. Rules of Criminal Procedure and Confusion — Mr. Johnson

In his separate challenge to the dual-jury procedure, Mr. Johnson asserts first that the trial court abused its discretion by using an unauthorized procedure. As a second argument under this point, he suggests that the procedure employed by the circuit court condemned his right to a fair trial because it was fraught with confusion and uncertainty.

██ At the pretrial hearing where the State presented the novel idea of using a dual jury, Mr. Johnson made an initial general objection to the procedure. The court reserved ruling and asked

counsel to research the issue and report their findings the following day. Upon reconvening, Mr. Johnson reasserted his objection and stated:

> Your Honor, we would still object to [the dual jury], although, I don't know. The only case I saw was McGee and my interpretation was the same as [Ms. Woolbright's counsel]. It doesn't say you can't, it doesn't say you can. I looked at all of the statutes I could find about juries and I looked at all the criminal rules of procedure and I did not see anything that implicitly says that you can or cannot either way.

On appeal, Mr. Johnson now makes an eloquent argument that the trial court's use of dual juries was in direct contravention of the Arkansas Rules of Criminal Procedure and Amendment 80 to the Arkansas Constitution. That argument is made for the first time on appeal. Mr. Johnson never suggested to the trial court that impaneling a dual jury was in excess of its authority under the rules of criminal procedure or the Arkansas Constitution. We do not address arguments made for the first time on appeal. *Porter v. State,* 356 Ark. 17, 145 S.W.3d 376 (2004). In addition, we have steadfastly held to the rule that an appellant is bound by the scope and nature of the arguments made at trial. *Otis v. State,* 355 Ark. 590, 142 S.W.3d 615 (2004). Accordingly, we do not reach the merits of Mr. Johnson's rule-based argument as it has not been properly preserved.

Nonetheless, Mr. Johnson's second argument that the procedure was inappropriate because "neither the judge, attorneys, nor jury had a clear understanding of how the dual jury process was supposed to work, and how to adequately protect the rights of each Defendant" is properly before the court. The thrust of Mr. Johnson's point on appeal is that the dual jury was inappropriate because neither the judge, attorneys, nor jury had a clear understanding of how the dual jury process was supposed to work. As outlined earlier, the circuit court addressed the procedural concerns of each party as the trial progressed. Specifically, the voir dire of each jury was conducted separately. Each jury heard separate opening and closing statements. The defense portion of each case occurred outside the presence of the co-defendant's jury, and both juries deliberated independently.

The only possible point of confusion came when the State called Mr. Johnson's niece, Heather Walters, to testify. She was expected to testify about statements made by her uncle, including

a statement in which he implicated Ms. Woolbright. The judge refused defense counsels' request to have the Woolbright jury removed. Instead, the court instructed the prosecutor to tell the witness not to mention Ms. Woolbright. When it came time for Mr. Johnson to cross examine his niece, Ms. Woolbright objected and the State suggested that Mr. Johnson recall the witness in his case-in-chief. Mr. Johnson agreed to reserve his right to cross-examine for a later period. After the State rested its case-in-chief against Mr. Johnson, he called Ms. Walters to testify outside the presence of the Woolbright jury.

■ Mr. Johnson points to no specific place in the trial where the alleged confusion caused him prejudice. Instead, he contends that the lack of set procedure and guidelines denied him the right to a fair trial. Based upon our review of the record in this case, we cannot say that Mr. Johnson was denied his right to a fair trial by the impaneling of a dual jury. This court will not presume that an error is prejudicial. *Jefferson v. State,* 328 Ark. 23, 941 S.W.2d 404 (1997) (holding that a trial court's failure to follow the procedural mandate of a statute did not prejudice the defendant, and, therefore was not reversible error). A litigant is entitled to a fair trial but not a perfect one. *Id.* Some prejudice must be shown in order to find grounds to reverse a conviction. *Id.; See also Berna v. State,* 282 Ark. 563, 670 S.W.2d 434 (1984) (announcing the rule that it is "no longer presumed that simply because an error is committed it is prejudicial error."). Stated another way, we do not reverse a decision by the trial court absent a showing of prejudice. *See Stivers v. State,* 354 Ark. 140, 118 S.W.3d 558 (2003).

The use of a dual jury has recently come into vogue for trial courts. Appellate courts, while affirming the use of a dual jury, have recommended that trial courts use careful measures in employing the procedure. *See, e.g., Hedlund v. Sheldon,* 173 Ariz. 143 (1992); *Scarborough v. State,* 50 Md. App. 276 (1981); *State v. Corsi,* 86 N.J. 172 (1981); *State v. Padilla,* 125 N.M. 665 (1998); *People v. Ricrado B.,* 73 N.Y.2d 228 (1989). Some courts have characterized the use of a dual jury as a "partial severance." *See, e.g., United States v. Hayes,* 676 F.2d 1359, 1366 (11th Cir.1982); *United States v. Rowan,* 518 F.2d 685, 689 (6th Cir.1975); *United States v. Sidman,* 470 F.2d 1158, 1170 (9th Cir.1972); *Hedlund v. Sheldon,* 173 Ariz. 143 (1992); *People v. Cummings,* 4 Cal.4th 1233 (1993); *People v. Hana,* 447 Mich. 325 (1994); *State v. Padilla,* 125 N.M. 665 (1998); *People v. Brockway,* 683 N.Y.S.2d 671 (1998); *People v. Ricardo B.,* 73 N.Y.2d 228 (1989).

 It is undisputed that the circuit court in this case granted a severance. Historically, this court has indicated that "[w]hen a severance is granted, the trial against each defendant proceeds entirely independently of the other." *Palmer v. State,* 213 Ark. 956, 966, 214 S.W.2d 372, 377 (1948). The dissent cites this language from our prior case law and then concludes that the circuit court "abused its discretion by allowing the imposition of the dual-jury procedure."

 In concluding that the circuit court erred when it employed an unauthorized procedure, the dissent erroneously assumes that the dual-procedure is prohibited. We do not presume a procedure to be prohibited merely because it is not expressly authorized by a statute or rule. *See, e.g., Sikes v. Segers,* 263 Ark. 164, 563 S.W.2d 441 (1978). Indeed, the United States Court of Appeals for the Seventh Circuit recently held that, absent specific authorization, a district judge has inherent authority to impanel a dual jury. *See In Re High Fructose Corn Syrup Antitrust Litigation,* 361 F.3d 439 (7th Cir., 2004).

 In any event, a close reading of Rule 22.3 reveals that the dual-jury procedure employed by the circuit court in this case falls within the parameters of the rule. Specifically, in cases where a defendant moves for severance because of an out-of-court statement of a codefendant, the *prosecuting attorney* is entitled to elect "[a] joint trial at which the statement is not admitted into evidence." *See* Ark. R. Crim P. 22.3(a)(i) (2003). Here, the prosecutor, through his request for a clarification hearing, elected just such a procedure. That is, the prosecutor chose to have a joint trial at which Ms. Woolbright's statement was not admitted into evidence against Mr. Johnson. The prosecutor's right to elect is consonant with this court's recognition that a circuit court has great discretion to control and supervise a trial. *See Anderson v. State,* 353 Ark. 384, 108 S.W.3d 592 (2003).[1]

---

[1] The dissent states that the trial court erroneously allowed the State to "take two stabs at Rule 22.3." In fact, the State persisted in its effort to elect a joint trial with the prosecutor attempting, albeit unsuccessfully, to redact pursuant to Rule 22.3(a)(ii) and then electing to pursue a joint trial under Rule 22.3(a)(i). At no point did the State elect a severance; rather, the circuit court refused the State's election under Rule 22.3(a)(ii) and immediately issued an order *sua sponte* granting a severance, which is one of three courses a prosecutor may elect to

██ ██ Regardless of the propriety of the dual-jury procedure under our rules, we join the majority of courts that have expressed concern about dual juries. Accordingly, we condemn the practice and prohibit the use of dual juries until such time as a rule has been implemented to specifically address the practical considerations necessary for safeguarding the defendants' rights. However, because we can find no prejudice in this case[2], we must decline to reverse the defendants' convictions on this point.

### III. Motion To Suppress — Mr. Johnson

Finally, Mr. Johnson contends that the trial court erred in refusing to suppress evidence. As noted earlier, Ms. Godwin called the Forth Smith Police Department on March 15, 2002, and advised them that a homicide may have occurred, the victim's name was Cal or Calvin, and someone named Carl might be involved. She also told the detective who took the call, Lannie Reese, that Carl could be found at the Inn Towne Lodge in Fort Smith.

Detective Reese, accompanied by two other detectives, went to the Inn Towne Lodge to investigate. When they arrived, they asked the motel manager if anyone by the name of Cal or Carl was staying at the lodge. The manager told the officers that Mr. Johnson resided in room 249. The three officers went to room 249, knocked on the door, and stated "Fort Smith Police, we need to talk to you." According to Detective Reese, the three officers identified themselves as detectives with the Fort Smith Police Department. Although they were dressed in plainclothes, their weapons and badges were clearly visible. When Mr. Johnson answered the door, the detectives asked to step into his room and told him they had heard something had happened to Calvin and needed to visit with him about it. They also asked to search his room. Mr. Johnson invited the detectives inside and consented to a search of his room.

---

pursue under the severance rule. *See* Ark. R. Crim. P. 22.3(a)(iii). It was at this point that the prosecutor sought clarification of its election under Rule 22.3.

[2] The dissent contends that Ms. Woolbright was prejudiced because, had the cases been severed, evidence seized in violation of Mr. Johnson's constitutional rights "would have been subject to a ruling by the trial court as to [its admissibility against her]." This argument has never been raised by the defendant, either at trial or on appeal. Even under Rule 4-3(h), a defendant must properly preserve a point of error. *See Roberts v. State*, 352 Ark. 489, 102 S.W.3d 482 (2003).

Detective Reese searched the room and seized a pair of jeans. In the meantime, Detective John Joplin used Mr. Johnson's phone to run a warrant check on him. Detective Chad Sutton stood and watched over Mr. Johnson, and, after being prompted by one of the other detectives, noticed a bulge in Mr. Johnson's back pocket. With Mr. Johnson's consent, Detective Sutton seized a pocket knife. At that time, Mr. Johnson agreed to accompany the detectives to the police station. Because he did not have a vehicle, he rode in the police vehicle with the three detectives. During this entire encounter, the officers never advised Mr. Johnson that he had a right to refuse consent.

At the police station, Mr. Johnson was taken to a work cubicle for questioning. Detective Reese noticed that his wrist-watch appeared to have a red stain on it and seized it. Another officer later seized Mr. Johnson's boots. Thereafter, Ms. Wool-bright came to the police station and gave a statement implicating Mr. Johnson in the murder. At this point, Mr. Johnson was taken into custody and placed under arrest. Officer Daniel Grubbs secured Mr. Johnson while the other officers went to the wooded area near Southside High School to search for the victim's body. During a routine pat-down search, the officer seized a set of keys.

At a pretrial hearing, Mr. Johnson argued that the officers' search and seizure of his person and property contravened the protections guaranteed by Article 2, section 15, of the Arkansas Constitution. This case involves a procedure known as a "knock-and-talk," whereby police officers go to a person's residence without sufficient probable cause to obtain a search warrant, knock on the door, and ask to be admitted inside. After gaining entry, the officers inform the person that they are investigating potential criminal activity. The officers then ask for permission to search. *See Scott v. State,* 347 Ark. 767, 67 S.W.3d 567 (2002).

In reviewing a ruling denying a defendant's motion to suppress evidence obtained by a warrantless search, this court makes an independent determination based upon the totality of the circumstances, giving respectful consideration to the findings of the trial judge. *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003). The trial court's ruling will not be reversed unless it is clearly against the preponderance of the evidence. *See Scott v. State,* 347 Ark. 767, 67 S.W.3d 567 (2002). We will defer to the trial court in assessing the credibility of witnesses. *Id.*

■■ We have recently addressed the propriety of the "knock-and-talk" procedure under the protections of the Arkansas Constitution. *See State v. Brown,* 356 Ark. 460, ___ S.W.3d ___ (2004). In that case, we held that a home dweller must be advised of his or her right to refuse consent in order to validate a consensual search under the Arkansas Constitution. *Id.* It is undisputed that none of the officers informed Mr. Johnson that he had the right to refuse consent to the entry and subsequent search of his home. Accordingly, we must reverse and remand for the suppression of all evidence that flowed from this unconstitutional search.

In sum, we affirm the conviction and sentence of Ms. Woolbright and reverse and remand Mr. Johnson's conviction and sentence. We also reiterate our condemnation of the dual-jury procedure until such time as a rule has been implemented to specifically address the practical considerations necessary for safeguarding the defendants' rights.

### 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests that were decided adversely to Ms. Woolbright, and no prejudicial error has been found.

Affirmed in part and reversed and remanded in part.

GLAZE, J., dissents; DICKEY, C.J., joins.

THORNTON, J., dissents separately; CORBIN and HANNAH, JJ., join.

TOM GLAZE, Justice, dissenting. Four weeks ago, the majority court, in an illegal-drug case, *State v. Brown,* 356 Ark. 460, 156 S.W.3d 722 (2004), overruled this court's long-settled case law, *King v. State,* 262 Ark. 342, 557 S.W.2d 387 (1977), and Ark. Rule Crim. P. 11.1, to hold that the search of the residence of a suspect who consents to that search is invalid unless the law enforcement officer says the words, "You may refuse to consent." Because the officers in *State v. Brown* failed to mention those words, the majority court upheld the suppression of all the evidence of methamphetamine or contraband discovered in the suspects' residence.

Today, this court is confronted with a murder case. This majority court overturns the trial court's decision to suppress inculpatory evidence against the suspect/defendant, Carl Allen

Johnson, because the officers did not inform Johnson that he could refuse to consent to a search. At the time of this search, the law did not require officers to give Johnson such a statement. The three officers testified that, when they approached Johnson's residence (a motel room), they identified themselves as police officers, told Johnson they had information about the murder victim, and requested, without any show of force or coercion, to search his room. The officers made their approach during daylight. The officers said that Johnson invited them into the room and consented to the search. No evidence was offered to contradict the officers' testimony. After hearing this uncontroverted testimony, the trial court denied Johnson's motion to suppress, finding the search was voluntarily and consensually given by Johnson.

If this court applied the consensual-search law it established in *King v. State* and incorporated and adopted by this court in Rule 11.1 of the court's criminal rules of procedure, it would affirm the trial court's ruling to deny suppression of the incriminating evidence against Johnson found in his motel room. Under Arkansas law and the Fourth Amendment, it was the trial court's duty to hear evidence and testimony of the parties to determine from the totality of the circumstances if Johnson's consent was voluntary, keeping in mind that it is the State's burden to prove Johnson's consent was voluntarily given by clear and positive proof. *See Scheckloth v. Bustamonte*, 412 U.S. 218 (1973).

The State indisputably met its burden in the present case. Even so, because the officers failed to advise Johnson that he could refuse to consent to a search of his motel room, the majority court, under its newly adopted interpretation of Ark. Const. art. 2, § 15, *must reverse* the trial court's ruling and suppress damning evidence bearing on his role in the victim's murder.

In a case like this one, where the evidence at the trial court's hearing on Johnson's motion to suppress clearly shows Johnson freely gave his consent to search, it appears somewhat inane to require this court to reverse the trial court's decision merely because the officers failed to inform Johnson that he had the right to refuse their request to search. This court, until now, has utilized a sound and reasonable procedure under the Fourth Amendment to protect people against illegal searches and seizures. *Without any showing* that the Fourth Amendment and this court's Rule 11.1 fail to protect our citizens, the majority court has adopted a rule that can be misused and employed to reach an absurd result like the case now before us. Because there is *no* reason shown why this court

should change Arkansas's search-and-seizure law, I would follow Arkansas's well-settled law and affirm the trial court's decision.

DICKEY, C.J., joins this dissent.

RAY THORNTON, Justice, dissenting. I write separately to emphasize that there is no precedent in the State of Arkansas for the holding of the majority opinion affirming the conviction of Ms. Woolbright while reversing and remanding the conviction of Mr. Johnson. I would hold that the implementation of a dual-jury procedure in this case is a violation of appellants' right to a jury trial. Therefore, I respectfully dissent.

## I. Prohibition against dual juries

The majority "condemn[s] the practice and prohibit[s] the use of dual juries until such time as a rule has been implemented to specifically address the practical considerations necessary for safeguarding the defendants' rights." The majority holds that the trial court erred in failing to suppress evidence obtained against Mr. Johnson in a warrantless search and reverses his conviction. However, the majority then affirms the conviction and life sentence imposed upon Ms. Woolbright in the same dual-jury trial. This outcome is an untenable and prejudicial result of an unauthorized procedure.

Ms. Woolbright's life sentence is affirmed, notwithstanding her objection to a dual-jury procedure, even in the face of our own Ark. Sup. Ct. R. 4-3(h) requiring us to examine all "objections, motions, and requests" that were decided adversely to Ms. Woolbright. *Id.* Here, Ms. Woolbright should have the benefit of the majority's conclusion that this court "prohibit[s] the use of dual juries until such time as a rule has been implemented." I believe the procedure was not authorized before today's decision, and that Ms. Woolbright's conviction and sentence should be reversed, and her case should be remanded for a new trial.

## II. Severance

The right to jury trial is established by both Article 2, Section 7, of the Arkansas Constitution and the Sixth Amendment to the United States Constitution. We have adopted Arkansas Rule of Criminal Procedure 22.3 to determine under what circumstances severance may be ordered. The rule provides:

> (a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is

not admissible against him, the court shall determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court shall require the prosecuting attorney to elect one (1) of the following courses:

(i) a joint trial at which the statement is not admitted into evidence;

(ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the statement will not prejudice the moving defendant; or

(iii) severance of the moving defendant.

(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), shall grant a severance of defendants[.]

*Id.*

With regard to the issue of severance, we stated in *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995):

Rule 22.3 of the Arkansas Rules of Criminal Procedure gives the trial court broad discretion in determining whether to grant or deny a motion to sever. *Cox v. State*, 305 Ark. 244, 808 S.W.2d 306 (1991). We have also defined the test in deciding a severance motion and the factors to be weighed in assessing it:

The issue of severance is to be determined on a case by case basis, considering the totality of the circumstances, with the following factors favoring severance: (1) where defenses are antagonistic; (2) where it is difficult to segregate the evidence; (3) where there is a lack of substantial evidence implicating one defendant except for the accusation of the other defendant; (4) where one defendant could have deprived the other of all peremptory challenges; (5) where if one defendant chooses to testify the other is compelled to do so; (6) where one defendant has no prior criminal record and the other has; (7) where circumstantial evidence against one defendant appears stronger than against the other.

*Cloird v. State*, 314 Ark. 296, 301, 862 S.W.2d 211, 213 (1993).

*Rockett, supra.*

The effect of a severance order has been precisely articulated in *Palmer v. State,* 213 Ark. 956, 214 S.W.2d 372 (1948), when we considered the effect of severance on two severed trials arising from the same criminal acts. We stated:

> When a severance is granted, the trial against each defendant [Palmer and Hamm] proceeds entirely independently of the other. The record of the trial in the case of *State v. Hamm* is not before us; and we have no information as to what particular facts and defenses were presented in that case. Palmer has not tendered us, either by supplemental bill of exceptions or otherwise, the record in *Hamm* cases: so, we do not know Hamm's mental condition or any other factor that might have appeared in evidence in that case to cause the jury to find him guilty or to fix his sentence at life imprisonment.

*Palmer, supra.* In *Palmer,* we concluded that the imposition of a death sentence against Palmer was not subject to attack on the basis that Hamm had only received a sentence of life imprisonment. *Id.*

A severance such as that ordered in the case *sub judice* was erroneously modified to permit a dual jury after severance was ordered. The trial court abused its discretion by allowing the imposition of the dual-jury procedure, notwithstanding that appellants' motion for severance had been granted. At issue at the hearing on the motion for severance on August 22, 2002, was whether statements, which were made by Ms. Woolbright concerning an alleged confession made by Mr. Johnson, would be redacted. The majority opinion has concluded that the evidence obtained in Johnson's hotel room should have been suppressed, and the question of redacting Ms. Woolbright's statements is in limbo. Reflecting the confusion, I note that the prosecutor favored severance when he stated:

> [T]he case is set for trial I think in about two weeks and we are getting close in time. Basically the situation is that if the court determines after seeing the redacted statement that it is not sufficient under the law to protect the rights of Mr. Johnson, then, the court can grant the severance right there and Mr. Johnson's trial can proceed, so we have not lost anything because the State would be asking to try Mr. Johnson first in the event that the court does not sever the defendants.

Thus, the prosecutor's election to redact portions of Ms. Woolbright's testimony was made under Rule 22.3, and severance was

granted. In its order dated November 7, 2002, the trial court stated, "Comes before the court the motion of the defendants for severance, and the motion is hereby granted." Once severance has occurred, the two cases should have been considered separately.

However, the prosecutor contacted the trial court in writing, requesting that a hearing be held for the purpose of modifying the order granting severance. At that hearing, the following colloquy occurred:

> THE COURT: [A]fter reviewing a transcription of the statements or taped interviews with one of the defendants, Rebecca Woolbright, and after reviewing some case law that was provided to the court, the court entered an order that after having read the transcriptions that the cases would be severed, and the court also received a letter from Mr. Self [attorney for Woolbright, stating that his "client's defense would be prejudiced if her statement" were presented in the State's proposed redacted form] relative to his position on the severance. Following that, Mr. Rhoades [prosecuting attorney] contacted the court in writing to ask if we could have a hearing for clarity purposes . . . [.]

> MR. RHOADES: I'm here for clarity, Judge. . . . Your Honor, basically the situation for the State is that — and I understand the court's ruling — I'm not arguing about the court's ruling — is that the State, the State is given the options [sic] to, when a severance motion is made, to either redact or not use, and we indicated to the court we were going to redact. The court looked at it and decided we couldn't redact and make it work, and I'm not prepared — and the State is not prepared to try the case without the statement, so that's where we're at. We're at the fact they have been severed.

The election authorized by Rule 22.3 was made at the August 22 hearing, and the trial court ordered that the trials should be severed. Subsequently, the prosecuting attorney took another bite at the Rule 22.3 apple and sought to proceed with a dual-jury experiment. There is no provision allowing the State to take two stabs at Rule 22.3. In this case, the prosecutor sought to have portions of Ms. Woolbright's testimony redacted under Rule 22.3(a)(ii) at the hearing on August 22, and then after a severance was granted, sought a second election during the November 7 hearing to go forward with a dual-jury procedure. By so doing, the

trial court erroneously expanded Rule 22.3 by ordering a dual-jury trial. It is clear that our court has not modified or amended Ark. R. Crim. P. 22.3, and we have never approved the dual-jury procedure in the context of Rule 22.3. For these additional reasons, we should reverse and remand.

### III. Prejudice to Ms. Woolbright

The majority determines that much of the evidence that had been presented to the dual juries must be suppressed. The items that were seized by the officers during the knock-and-talk procedure were a pair of jeans, a pocket knife, Johnson's statement to the police, a wristwatch with a blood stain, boots, and a set of keys. Because the majority has held that the evidence should be suppressed, I believe any consideration of this evidence that was heard by the Woolbright jury is prejudicial.

Specifically, the Woolbright jury heard testimony on these items from two witnesses, Phillip Rains and Melissa Myhand, from the Arkansas State Crime Laboratory. Both Mr. Rains and Ms. Myhand testified that they conducted tests and found the victim's blood on the knife and watch retrieved from the Fort Smith Police Department. It is clear that consideration of this suppressed evidence was prejudicial to Ms. Woolbright when she was tried as an accomplice and convicted of first-degree murder while Mr. Johnson's jury sat next to hers in the same courtroom. Under these circumstances, there can be no doubt that the Woolbright jury would have considered this evidence and imputed Mr. Johnson's actions to her.

If appellants' trials had been properly severed, the admission of any such evidence against Ms. Woolbright would have been subject to a ruling by the trial court as to whether evidence suppressed for Mr. Johnson could be admitted against his co-defendant, Ms. Woolbright. However, the trial court made no ruling as to whether such evidence could be admitted in the Woolbright trial. Again, for these reasons, I find prejudicial error and would reverse and remand.

### IV. Other jurisdictions

While Arkansas has never approved a dual-jury procedure, other states have strongly discouraged the dual-jury procedure. *See United States v. Rimar*, 558 F.2d 1271 (6th Cir. 1977); *United States v. Sidman*, 470 F.2d 1158 (9th Cir. 1972); *State v. Corsi*, 430 A.2d

210 (N.J. 1981); *State v. Watson*, 397 So. 2d 1337 (La. 1981); *Scarborough v. State*, 437 A.2d 672 (1981); *People v. Brooks*, 285 N.W.2d 307 (Mich. App. 1979).

In *State v. Corsi*, 430 A.2d 210 (N.J. 1981), the Supreme Court of New Jersey, affirming the conviction of two defendants tried jointly before separate juries, expressed its concern for the use of the dual-jury procedure:

> The reason for the lack of widespread adoption of this technique would appear to be the belief that application of appropriate safeguards necessary to protect the rights of defendants in such a trial would be more time consuming than if separate trials were ordered. In addition, inherent in such a complicated procedure is the greatly enhanced possibility of error. It seems clear, therefore, that such procedure remains the rare exception rather than the rule.

> We conclude that the multiple jury procedure utilized in the instant case can involve substantial risks of prejudice to a defendant's right to a fair trial. . . . [T]here are too many opportunities for reversible error to take place. We do not recommend it. If it is to be used at all, it should be in relatively uncomplicated situations which will not require the excessive moving of juries in and out of the courtroom and where physical separation of the juries during the entire trial proceedings can be insured. In short, a trial court should carefully weigh the risks involved before attempting to utilize the multiple jury procedure.

*Id.* (citation omitted).

Notwithstanding these cases that strongly discourage the practice of dual juries, the majority cites the Seventh Circuit in the civil case of *In Re High Fructose Corn Syrup Antitrust Litigation*, 361 F.3d 439 (7th Cir., 2004), for the proposition that "a judge has inherent authority to impanel a dual jury." I submit that this federal, antitrust case involving corn syrup is inapplicable to a criminal case in our state-court system and has no room in our state's jurisprudence.

### V. Conclusion

We should go beyond the rationale of the Supreme Court of New Jersey and hold that the dual-jury procedure is prohibited and is a violation of appellants' jury-trial rights until and unless we

adopt rules approving and regulating such a procedure. Here, the dual-jury procedure was thoroughly confusing at trial. The trial court, the prosecutor, and defense counsel repeatedly admitted on the record that they were confused about how to proceed. For these reasons, as well as the vastly different outcomes of appellants' trial, I conclude that there was prejudice in this dual-jury procedure.

In my view, Arkansas should continue to disapprove of the dual-jury procedure because of the great potential for error. Accordingly, under a 4-3(h) review, I recommend that we reverse and remand appellant Woolbright's conviction and sentence as well as that of appellant Johnson, and that the new trials be severed in accordance with Rule 22.3.

I am authorized to state that Justice CORBIN and Justice HANNAH join in this dissent.